RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AUG 19 2013

FILED
DOCKETED _____
DATE          INITIAL

Case No. 12-35986

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

TIMOTHY L. BLIXSETH

Appellant,

v.

YELLOWSTONE MOUNTAIN CLUB, LLC, et al.

Appellees,

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MONTANA, BUTTE DIVISION, CASE NO. 2:11-CV-00073-BU-SEH
HONORABLE SAM E. HADDON, DISTRICT JUDGE, PRESIDING

## YCLT'S OPPOSITION TO TIMOTHY BLIXSETH'S EMERGENCY MOTION TO STAY PROCEEDINGS

Charles W. Hingle (1947)
Shane P. Coleman (3417)
HOLLAND & HART LLP
401 North 31st Street, Suite 1500
P.O. Box 639
Billings, Montana 59103-0639
chingle@hollandhart.com
spcoleman@hollandhart.com
Phone: 406-252-2166
Facsimile: 406-252-1669

Robert R. Bell
MULLIN HOARD & BROWN, LLP
Amarillo National Plaza Two, Suite 800
500 South Taylor, Lobby Box #213
Amarillo, Texas 79101-2445
rbell@mhba.com
Phone: 806-372-5050
Facsimile: 806-372-5086

**Attorneys for YCLT**



Yellowstone Club Liquidating Trust ("YCLT") files this Opposition to Timothy Blixseth's Emergency Motion Under Circuit Rule 27-3 to Stay Proceedings ("Motion to Stay").

## I. INTRODUCTION

Timothy Blixseth ("Blixseth") seeks an order from this Court that would stay a September 10, 2013 hearing on his Rule 9024 Motion currently pending in the bankruptcy court. Blixseth also seeks an order preventing YCLT from enforcing the $40 million judgment that the bankruptcy court rendered in its favor on December 5, 2012.[1] (Exh. A). In other words, Blixseth seeks a stay of enforcement without having to post a supersedeas bond, which is clearly inappropriate. The basis for the relief now sought is the alleged misconduct of the Honorable Ralph B. Kirscher ("Judge Kirscher"). Currently pending before this Court is Blixseth's appeal with respect to his efforts to disqualify Judge Kirscher from presiding over the Yellowstone Club bankruptcy and its related proceedings, efforts which Judge Kirscher, as well as the District Court on appeal, have flatly rejected.

Blixseth first moved to disqualify Judge Kirscher in 2010, alleging that he was part of some mythical "grand conspiracy." Predictably, these accusations have not been made against Judge Kirscher alone. Among those

---

[1] Blixseth further seeks to stay YCLT's pursuit of other lawsuits.

Blixseth has accused of conspiring or being biased against him are federal judges and law clerks, attorneys and law firms involved in the YCLT bankruptcy proceedings, and political figures and institutions, including the Governor of Montana. (Exh. B at pp. 3-9) Blixseth's grand conspiracy theory now even reaches to Washington, D.C., where in a recent letter Blixseth added Attorney General Eric Holder and his Deputy, Lanny Breuer, to the ever-growing list of individuals allegedly out to get him. (Exh. C).

None of these accusations have ever been found to have merit. Indeed, Blixseth and his counsel have been sanctioned in another federal court case in which Blixseth filed a **$9 billion counterclaim** against the then YCLT Trustee, Marc S. Kirschner, alleging that the YCLT Trustee was part of the same "grand conspiracy" involving Judge Kirscher. (Exh. D) Blixseth's counterclaims were dismissed on the YCLT's motion to dismiss, and sanctions of $90,182.71 collectively were granted against Blixseth and Mr. Conant because their counterclaim filing was made "in bad faith and in knowing disregard of Rule 13 and the *Barton* rule." (*Id.*; *see also* Exh. X (order granting sanctions, to be paid 1/3 by Conant and 2/3 by Blixseth)). As the Honorable Gary A. Fees, United States District for the Central District of California further aptly stated:

However, there is more: **the voluminous evidence produced by the Parties regarding conduct by Blixseth and his counsel in other proceedings provides further support for the conclusion that the Counterclaim was filed with improper motive.** It is apparent to the Court that Blixseth is involved in numerous contentious legal battles in various fora with Kirschner and a host of other entities and persons. In these other proceedings, he has achieved some success, and has suffered significant defeats. **It is also apparent, however, that Blixseth views all of these proceedings as part of a vast conspiracy in which his opponents, the courts, and persons holding political office are aligned against him. His response has been to engage in scorched earth tactics in which he has launched attacks against every perceived adversary.**

(Exh. D (emphasis added)).

Blixseth first moved to disqualify Judge Kirscher in 2010, claiming Judge Kirscher was guilty of all kinds of nefarious conduct. Not coincidentally, that motion was filed shortly after Judge Kirscher found in a 135-page memorandum decision that Blixseth had misappropriated millions of dollars of loan proceeds from Credit Suisse. Judge Kirscher, in fact, had found that:

> The evidence shows that, as a threshold matter, Blixseth removed funds from the Debtor entities and attempted to disguise the removal of such funds as a loan when in fact, the money was a distribution to BGI and then Blixseth. Blixseth's removal of funds from the Debtors was the primary, and perhaps sole reason the Debtors are in bankruptcy today.

*Blixseth v. Marc S. Kirschner, Trustee of the Yellowstone Club Liquidating Trust*, 436 B.R. 598, 606 (Bankr. D. Mont. 2010). The Bankruptcy Court

further concluded concerning Blixseth, "[t]he overwhelming evidence shows a pattern of deception as it relates to the use of the Credit Suisse loan proceeds." *Id*. at 651. And finally, the Bankruptcy Court concluded, "Blixseth's fraudulent intent could not be more clear." *Id*. at 664.

Less than three months after entry of those findings and conclusions, Blixseth alleged for the first time that grounds existed for the disqualification of Judge Kirscher. In an exhaustive 47-page memorandum, Judge Kirscher painstakingly dispelled each of Blixseth's unfounded allegations. (Exh. U). On appeal to the United States District Court for the District of Montana, the Honorable Sam E. Haddon presiding ("Judge Haddon"), concluded that "no showing of bias, or prejudice or any lack of impartiality by Judge Kirscher has been demonstrated. Rather, dispassionate assessment reveals that extraordinary consideration was accorded Blixseth and his position throughout the proceedings." (Exh. W).

Undaunted by these rulings, Blixseth pressed on and filed six appeals relating to the denial of his disqualification motion (12-35986, 13-35191, 13-35192, 13-35196, 13-35197 and 13-35198). Apparently, he has also recently filed under seal a Complaint of Judicial Misconduct against Judge Kirscher, Case No. 13-90073.

What motivates this man? Simply this. Blixseth looted over $200 million from the Yellowstone Club entities. *Blixseth v. Kirscher,* 436 B.R. at 606. This act of greed was the primary, if not sole, cause of the ensuing bankruptcies of each entity. YCLT brought suit against Blixseth seeking to hold him responsible for this looting. After affording Blixseth an extra nine months to prepare for trial, after listening to nine days of testimony from 24 different witnesses, and after reviewing numerous exhibits offered into evidence, Judge Kirscher issued a lengthy opinion detailing the overwhelming evidence supporting YCLT's claims. *Id.* As a result, Judge Kirscher entered a judgment against Blixseth. Although he found that Blixseth looted over $200 million from the debtors, Judge Kirscher reduced the judgment amount to $40 million, on an application of the *in pari delicto* doctrine.[2] The fact that Judge Kirscher did not enter judgment in the full amount of the looting is certainly not indicative of a Judge who is biased and "out to get" Blixseth. Moreover, in a stunning display of lack of awareness, in the Motion to Stay, Blixseth maintains that the alleged conspiracy, of which Judge Kirscher is allegedly a member, "called for Judge Kirscher to enter hundreds of millions of dollars in judgments against Blixseth for the plan to be successful." (Motion to Stay at p. 10). Obviously, Judge Kirscher

---

[2] Respectfully, YCLT submits that the applications of *in pari delicto* was improper.

has done no such thing, having entered a judgment for "only" $40 million. This bluster, however, is typical of Blixseth's "say-anything" approach.

Nevertheless, Blixseth now has decided he wants to endeavor to undermine Judge Kirscher's integrity to escape the judgment. Blixseth's desire has nothing to do with Judge Kirscher's conduct; it instead has everything to do with Judge Kirscher's rulings. It has nothing to do with viewing the "evidence" from an objective standpoint; rather, it has to do with viewing the "evidence" from the jaundiced viewpoint of a guilty man struggling to escape the consequences of his own actions. It has nothing to do with new evidence; rather, it has to do with the same tired, old arguments Blixseth repeatedly makes and leaks to the press to smear Judge Kirscher — arguments that not only Judge Kirscher has dispelled, but arguments District Court Judge Haddon categorically rejected and arguments YCLT has shown in its brief in 12-35986 to be totally lacking and without merit.

## II. SUMMARY OF ARGUMENT

Although Blixseth sets forth a plethora of alleged grievances in this Motion to Stay, the vast majority are simply regurgitations of issues that he has raised in the past, which have been flatly rejected below, and which are currently pending in this Court on appeal. Frankly, the older misrepresentations set forth in the Motion to Stay are too numerous to refute

herein, but have been addressed in detail in YCLT's appellate briefing in this case, and will be further addressed in briefs filed in other pending appeals.

Blixseth's entitlement to even seek "emergency" relief under Ninth Circuit Rule 27-3 is highly suspect given that he has made no showing of irreparable harm as required under the Rule. Nevertheless, as specific grounds for seeking "emergency" relief, Blixseth claims that since his disqualification motion was denied, he became aware of additional "evidence" that supports his efforts to disqualify Judge Kirscher. The remainder of this response will focus on this so-called new "evidence." Specifically, Blixseth claims to have discovered (1) internal documents allegedly retrieved from his ex-wife's computers; and (2) documents printed off the internet that allegedly demonstrate that Judge Kirscher currently has a relationship with the law firm he was associated with prior to becoming a bankruptcy judge some 13 years ago.

As will be shown, there are serious issues with respect to the authenticity of the "evidence" allegedly obtained from the computer of Blixseth's ex-wife. Yet, Blixseth fails to inform this Court that there are serious issues that have been raised as to authenticity of these documents. This failure to be candid with the Court is strikingly similar to the actions of some of Blixseth's counsel in a case pending in the United States District

Court for Idaho wherein Messrs. Flynn, Conant and Stillman were sanctioned on March 29, 2013 for improperly relying on certain evidence without revealing other existing relevant evidence to the Court. Next they rely on "evidence" from the internet. If Blixseth (or his counsel) had conducted even a cursory review of that internet information they would have determined that the information was unreliable. Simply stated, Blixseth's newly discovered alleged "evidence" does not in any fashion support the relief he seeks.

## III. ARGUMENT

Blixseth and his counsel are besmirching the character of a sitting federal judge based on "evidence" they ought to have reason to believe (1) has been altered; and (2) is demonstrably unreliable.

### A.    Documents allegedly retrieved from his ex-wife's computer

Blixseth refers to two documents that were allegedly obtained from the computer of his ex-wife, Edra Blixseth ("Edra"). Specifically, there are two memos that are said to be attached as Exhibits 13 and 16 to the Emergency Motion. While these documents are set forth in the voluminous exhibits tendered by Mr. Blixseth, the YCLT cannot ascertain whether they have properly been identified as Exhibits 13 and 16. Accordingly, for ease of reference herein YCLT attaches those documents as Exhibits T and V.

Blixseth repeatedly refers to this "evidence" as "authenticated" when Blixseth knows full well that it is anything but authenticated. Significantly, Blixseth fails to tell the Court that there are serious questions about the authenticity of this "evidence." Such failure is simply bewildering (and frankly sanctionable) because Blixseth and his counsel are fully aware of the serious authenticity issues with this "evidence." Specifically, this issue was brought to their attention in connection with a recent challenge to the Marital Settlement Agreement in the divorce proceedings between Blixseth and Edra. In that proceeding, Blixseth brought a Motion for Sanctions and proffered these exhibits in partial support of that relief. In response to that Motion for Sanctions, Edra and her counsel filed affidavits and supporting documents that conclusively demonstrate that the "evidence" is forged. (Exh. E). On January 31, 2013, the Motions for Sanctions in the divorce court was "taken off calendar without prejudice." (Exh. F). Blixseth has not re-filed the motion.

Exhibit T is allegedly an eight-page memo from Edra to her lawyer regarding a Marital Settlement Agreement (the "MSA memo"). In that memo, Blixseth points to the following statement as evidence of Judge Kirscher's alleged bias and corruption: "Remember we have added help there from the BK Judge who loves us, and hates Tim and Mike Flynn. At

this point they could not get a decent ruling in their favor from the Judge if they tried. Either way SB and BS have things in place in that courtroom to help us." In the Response to the Motion for Sanctions, however, compelling evidence is presented that this portion of the document has been altered, is fraudulent and a forgery. (Exh. E).

Specifically, Edra's lawyer provides a September 20, 2009 e-mail from Edra wherein she attaches the original MSA memo. (Exh. E). The original MSA memo at first glance appears identical to the exhibit submitted and relied on by Blixseth. <u>Closer examination reveals, however, that the MSA memo provided by Edra to her lawyer does **NOT** contain the statement set forth above.</u> (*Id.*) Additionally, Edra's lawyer at the time the original memo was drafted, asked Edra to cut and paste the MSA memo into an e-mail so that he could read it on his Blackberry. (*Id.*) Significantly, that contemporaneous copy of the memo in the Blackberry e-mail (which is also attached to the affidavit) <u>does **NOT** contain the statement set forth above.</u> (*Id.*) Simply stated, it is abundantly clear that the evidence submitted to this Court is not authentic and has indeed been altered.[3] Nevertheless, Blixseth

---

[3] Blixseth boldly proclaims that in her deposition in December of 2012 Edra authenticated the altered MSA memo. This is an outright misrepresentation of the record. The deposition transcript referred to in this regard consists mainly of sparring between lawyers as to whether the document can even be used. In her deposition Edra was shown the seven-page altered MSA Memo

never mentions even the hint of a problem with authenticity. He has thus failed in his duty of candor to this Court and clearly has not advanced any basis for the extraordinary relief he requests and his wholly unfounded attack on a highly respected federal judge.

Nor does the affidavit from Blixseth's so-called computer expert advance his cause. The YCLT, to date, has not had access to the hard drive so it has not been able to conduct its own forensic examination, nor has the YCLT had the opportunity to cross-examine Mr. Blixseth's so-called expert. However, the affidavit does confirm that this document was accessed and altered after Ms. Blixseth forwarded it to her lawyer on September 20, 2009.

With respect to Exhibit V (the "MSA Bullet Points Memo"), Blixseth again points to alleged statements reflecting some type of a belief that Judge Kirscher has been improperly influenced. According to Edra, the MSA Bullet Points Memo is "completely manufactured. I didn't type it and I have never seen it before." (Exh. E). Furthermore, all Blixseth's so-called expert can offer with respect to MSA Bullet Points Memo (which is a pdf) is the time at which it was allegedly placed on the so-called "bare" drive.

---

that, as shown, at first glance has the appearance of being identical to the original MSA memo. Notably, the statement upon which Blixseth relies (and which was added) appears on the last page of the seven page document. What is abundantly clear, however, is that Edra did not authenticate the alleged statements in the document on which Blixseth places so much reliance and asks this Court to do so as well.

Blixseth repeatedly makes the feeble allegation that the so-called expert somehow proves the foregoing documents were created at a time when "it is believed" the computer was in the exclusive control of Edra. It does no such thing. Additionally, one would think before making such serious allegations against a sitting federal judge that such allegations would be confirmed and that Blixseth and his counsel could do better than simply setting forth their belief. This stands in stark contrast to the specific denials set forth in the affidavits of Edra and her counsel. (Exh. E).

Making matters even worse, Blixseth and his counsel allegedly received, and rely in the entirety on, this information from Dennis Montgomery, a former business partner of Edra. (Exh. G). As such, the credibility of Montgomery is critical to the resolution of this matter. However, according to one litigant who brought suit against Montgomery to block his discharge in bankruptcy, Montgomery has a pattern of "lying under oath" and has "a long history of fraud and perjury." (Exh. H at pp. 5-6). Further, according to this litigant, "Montgomery's *modus operandi* is to conceal documents and money." (Exh. H at p. 5). This litigant is none other than Michael Flynn, one of the attorneys representing Blixseth in connection with this motion. Mr. Flynn is represented in that action by Christopher J. Conant, another one of Blixseth's attorneys herein. (Exh. I). In the

Montgomery bankruptcy case, Flynn alleged that Montgomery defrauded the United States government. To that end, Montgomery asserted his Fifth Amendment rights over 200 times in the deposition that was taken in that case by Mr. Conant on Mr. Flynn's behalf. (Exh. J). In this same deposition, Mr. Flynn accused Montgomery of being a "computer hacker" and a "fraud." (Exh. J at p. 230).

The above-referenced lawsuit stems from a sanction award Flynn received from the United States District Court in Nevada against Montgomery. In that action, the court concluded that "Mr. Montgomery's September 2007 declaration contained untrue statements, which he knew were untrue." (Exh. K at p. 1). The court further ordered that a copy of its order was to be sent to the Office of the United States Attorney. (Exh. K at p. 53).

Despite the foregoing history, Blixseth (through Flynn and Conant) now submit to this Court computer related "evidence" that was allegedly obtained from the same Dennis Montgomery who in their own words, has "a long history of fraud and perjury" and is a "computer hacker." Apparently, when Montgomery is providing "evidence" that is allegedly helpful to their cause, his past pattern of "lying under oath" is of no concern. YCLT submits that for this reason alone this Court is entitled to, and should,

disregard entirely everything provided by Montgomery, who, according to a United States District Judge and Blixseth's own counsel, is a liar.

Significantly, this is not the first time Blixseth's counsel (with the exception of Mr. Ferrigno) have played fast and loose with a Court when it comes to evidence. Specifically, in March of 2013, Messrs. Flynn, Conant and Stillman were sanctioned by the United States District Court in Idaho (in a case where they represent Mr. Blixseth's son) for improperly relying on certain evidence. (Exh. L).[4] In that case, counsel submitted an unsigned declaration from a witness to the Court in connection with a pending Motion to Dismiss claiming that this "whistle blower" feared retaliation. Subsequently, counsel obtained a sworn affidavit from the witness that differed from the unsigned declaration that had been submitted to the Court. Messrs. Flynn, Conant and Stillman failed to reveal the existence of this sworn affidavit and continued to rely on the unsigned declaration. In ordering sanctions, the Idaho District Court found:

---

[4] The Idaho District Court stayed the deadlines relating to recovery of costs and fees and for making payments pending resolution of a motion to reconsider the sanctions order. (Exh. M). On August 15, 2013, the pending motion for re-consideration was denied, however, the Court indicated that it was still considering relief requested by Mr. Stillman with respect to the imposition of sanctions. (Exh. Y). Counsel also have pending an Objection to the District Judge with respect to the sanctions entered by the Magistrate Judge.

Plaintiffs' counsel had a duty of candor under Idaho Rule of Professional Conduct 3.3(a)(1) not to knowingly 'make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.' Plaintiffs' counsel's failure to file the signed statement of Mr. Miller, once it was received and in the context of representations in writing and orally about the facts and circumstances of Mr. Miller's unsworn testimony, constituted the equivalent of an affirmative misrepresentation. The signed 'affidavit' was not the same document as the unsigned declaration. The statement of fact that the witness, Mr. Miller, would not sign a statement under oath because of fear of retaliation was no longer true, even if true at the outset, the moment he did sign the affidavit. Further, Plaintiff's counsel's failure to remedy such matters is a breach of a lawyer's duty 'duty of candor to the tribunal' (sic) which warrants 'reasonable remedial measure.' (Internal citations omitted).

In addition, Mr. Conant was also sanctioned in another federal court case in which Blixseth filed a **$9 billion counterclaim** against the then YCLT Trustee, Marc S. Kirschner. (*See* Exh. D) In that case, Blixseth alleged that the YCLT Trustee was part of the same "grand conspiracy" involving Judge Kirscher. Blixseth's counterclaims were dismissed on the YCLT's motion to dismiss, and sanctions of $90,182.71 collectively were granted against Blixseth and Mr. Conant because their filing was made "in bad faith and in knowing disregard of Rule 13 and the *Barton* rule." (*Id.*; *see also* Exh. X (order granting sanctions, to be paid 1/3 by Conant and 2/3 by Blixseth)).

Unfortunately, counsel learned nothing from these experiences. They continue their pattern of failing in their duty to be fully candid with the Court. They ought to be sanctioned for it.

**B.**      **Judge Kirscher's alleged relationship with his former law firm.**

Blixseth asserts that Judge Kirscher continues to have some "undisclosed" relationship with his former law firm, Worden Thane, P.C., which he left in 1999 when he took the bench. This is important, posits Blixseth, because Worden Thane represents the Class B Shareholders (the appeal relating to the Class B Shareholders is 13-35113). In other words, Blixseth accuses Judge Kirscher of an improper relationship with the law firm of one of Blixseth's creditors.

What is the smoking gun that proves these serious allegations? The internet — which we all know is never wrong. Blixseth attaches as evidence a web page from some website called "data.com." This web page does list Judge Kirscher as "vice-president" of the firm. (Exh. N). However, if one clicks on the name of the firm and then clicks on the firm's web address on the next page one will see that Judge Kirscher is not listed as one of the attorneys on the firm's website. (Exh. O). Moreover, there are other mistakes on the data.com site. For instance, Robert Terrazas is listed as a vice-president also, yet he is not with the firm, but has his own firm, The

Terrazas Law Offices. (Exh. P). Likewise, Benjamin Williams is no longer with the firm. Finally, Amy Smith, who data.com lists as a second year associate, has been with the firm since 2008, making her a fifth or sixth year associate. (Exh. Q). According to data.com, Ms. Smith's information was last updated on October 19, 2012. That is obviously inaccurate. Thus, the fact that Judge Kirscher's information was allegedly updated on September 19, 2012 is suspect to say the least. The fact of the matter is if you are going to accuse a federal judge of misconduct, you should not stake your claim on unreliable information from some obscure website that obtained its information from who knows where or when, with no apparent effort whatsoever to confirm the accuracy of those serious allegations.

Blixseth also states that according to intelius.com the email address of rkirscher@wthlaw.net is currently associated with Judge Kirscher. Blixseth attaches the web page from this site to support his claim. The section above the email address that is entitled "What is an Email Lookup?" states that it contains current and historical information. (Exh. R). No one denies that Judge Kirscher once had an email address at Worden Thane since he once worked there. The information from the intelius website, however, in no way proves Judge Kirscher has a current email address there. In fact, the attorneys from YCLT have attached, an email it received recently from one

of Worden Thane's partners, Ronald Bender. (Exh. S). This email shows that Worden Thane has adopted a new e-mail address (wordenthane.com as opposed to wthlaw.net). More specifically, Mr. Bender's email address is rbender@wordenthane.com, not rbender@wthlaw.net. (Exh. S).

Finally, Blixseth's citation to an article in the Sacramento Bee is quintessential Blixseth. It is readily apparent from a reading of the article that the source for the information concerning the Complaint of Judicial Misconduct against Judge Kirscher is Blixseth or one of his legion of lawyers. In other words, Blixseth feeds scandalous information to the press and then cites the article from the press as support for the information he provided.

## IV. CONCLUSION

As the Court can undoubtedly ascertain from the tone of the briefing herein the YCLT has grown exceedingly weary of Mr. Blixseth's constant efforts to divert attention away from his own wrongful conduct and increasingly desperate attempts to avoid the day of reckoning and his constant abuse of a fair and highly respected federal court judge.

Candidly, it is impossible to tell the depths to which Mr. Blixseth and his counsel will go to avoid the consequences of Blixseth's wrongful conduct. The attack on Judge Kirscher is simply inexcusable, and wholly

without merit. Likewise, the ever-growing list of those allegedly conspiring against Blixseth is simply too lengthy to set forth herein. Recently, the number of alleged conspirators expanded when Blixseth added U.S. Attorney General, Eric Holder, and his Deputy, Lanny Breuer, to the ever-growing list of individuals out to get him. (Exh. C). In an eleven-page May 29, 2013 letter submitted to the Public Integrity Section of the U.S. Department of Justice, Blixseth's lawyers (including Messrs. Flynn, Conant and Stillman) allege that "[i]n 2010 the Montana political machinery operated by Schweitzer [former Governor of Montana] under the financial influence of Burkle and Byrne [two more alleged conspirators] then turned directly to the Holder/Breuer DOJ to directly 'target' Mr. Blixseth with a baseless criminal investigation, and derail the Montana federal career agent investigation of Edra." In a word, ridiculous.

It is time for this misconduct to end. YCLT submits that this Court should summarily reject Blixseth's Motion to Stay and sanction him and his lawyers for failing to be candid with the Court about the doubtful provenance of the evidence on which they relied in bringing this emergency request before this Court.

DATED this 16th day of August, 2013.

Robert R. Bell
MULLIN HOARD & BROWN, LLP
Amarillo National Plaza Two, Suite 800
500 South Taylor, Lobby Box #213
Amarillo, Texas 79101-2445
rbell@mhba.com

ATTORNEYS FOR YCLT

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th of August, 2013, I have mailed the foregoing document by First Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following counsel of record for Blixseth:

Christopher Conant
Conant Law LLC
730 17th Street, Suite 200
Denver, CO 80202
cconant@conantlawyers.com

Michael John Ferrigno
Law Office of Michael J Ferrigno PLLC
Suite 486
1200 N. Main Street
Meridian, ID 83680
michael.ferrigno@ferrigno-law.com

Michael James Flynn Sr.
Michael J. Flynn
P.O. Box 690
6125 El Tordo
Rancho Santa Fe, CA 92067
mike@mjfesq.com

Patrick Fox
Doubek Pyfer & Fox LLP
P.O. Box 236
Helena, MT 59624
patrickfox@doubekpyfer.com

_____
Robert R. Bell

MULLIN•HOARD•BROWN•LLP



ATTORNEYS AT LAW

**ROBERT R. BELL, PARTNER**

Amarillo Office

August 16, 2013

**R E C E I V E D**
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AUG 1 9 2013

FILED _____
DOCKETED _____
                    DATE          INITIAL

**<u>Via Federal Express</u>**

Clerk of the Court for the
Ninth Circuit Court of Appeal
95 Seventh Street
San Francisco, CA 94103

    Re:    Emergency Motion to File Under Seal; Cause No. 12-35986

Dear Clerk of the Court:

    Pursuant to Circuit Rule 25-5(b)(9) and Circuit Rule 27-13(c), please find the enclosed documents submitted for filing in paper format:

1. Motion Under Circuit Rules 27-3 and 27-13 to File Opposition to Emergency Motion to Stay Under Seal;

2. YCLT's Opposition to Timothy Blixseth's Emergency Motion to Stay Proceedings;

3. Notification of Filing Under Seal Pursuant to Circuit Rule 27-13; and

4. Proposed Order granting Motion to File Opposition to Emergency to Stay Under Seal.

    If you have any questions or comments concerning the filing of these documents in paper format, please do not hesitate to contact me. If the Notification of Filing Under Seal is required to be filed via ECF, please let me know immediately as I will do so.

    Very truly yours,

Robert R. Bell

---

PO BOX 31656, 79120 • 500 S TAYLOR • SUITE 800, LB 213 • AMARILLO, TEXAS 79101
PHONE 806-372-5050 • FAX 806-371-6230

AMARILLO • LUBBOCK • DALLAS

WWW.MULLINHOARD.COM

V:\DATA\DOCS\LEGAL\5290\00\00736423.DOC