**No. 12-35986**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TIMOTHY L. BLIXSETH

*Appellant*,

v.

YELLOWSTONE MOUNTAIN CLUB, LLC, *et al*.

*Appellees*.

Appeal from the United States District Court for the District of Montana
Case No. 2:11-73-BU-SEH

**REPLY OF APPELLEES THE DEBTORS, YELLOWSTONE MOUNTAIN CLUB, LLC, ET AL., CROSSHARBOR CAPITAL PARTNERS, LLC AND CIP SUNRISE RIDGE OWNER LLC TO MICHAEL J. FLYNN'S RESPONSE TO ORDER TO SHOW CAUSE**

Paul D. Moore (Ma. No. 353100)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, Massachusetts 02110
Telephone: (857) 488-4200
Facsimile: (857) 488-4201
Email: pdmoore@duanemorris.com

Michael R. Lastowski (De. No. 3892)
DUANE MORRIS LLP
222 Delaware Avenue, Suite 1600
Wilmington, Delaware 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
Email: mlastowski@duanemorris.com

Benjamin P. Hursh (Mt. No. 7048)
CROWLEY FLECK PLLP
305 South 4th Street East, Suite 100
P.O. Box 7099
Missoula, Montana 59801
Telephone: (406) 253-3600
Facsimile: (406) 253-3636
Email: bhursh@crowleyfleck.com

*Attorneys for Appellee CrossHarbor Capital Partners, LLC and CIP Sunrise Ridge Owner LLC*

James A. Patten (Mt. No. 1191)
PATTEN, PETERMAN,
BEKKEDAHL & GREEN, PLLC
2817 2nd Avenue North, Suite 300
Billings, Montana 59101
Telephone: (406) 252-8500
Facsimile: (406) 252-9500
Email: apatten@ppbglaw.com

*Attorneys for Appellee Debtors, Yellowstone Mountain Club, LLC, et al.*

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

Table of Authorities ................................................................................ ii

I.      Introduction................................................................................1

II.     The Bases and Standards for Granting Sanctions ..........................................4

        A.      28 U.S.C. § 1927 ................................................................5

        B.      This Court's Inherent Powers................................................6

        C.      Federal Rule of Appellate Procedure 38 ...............................6

        D.      Federal Rule of Appellate Procedure 46(c).........................8

III.    Facts Supporting an Award of Sanctions .......................................9

        A.      Prior Disciplinary Proceedings...........................................10

        B.      Prior Sanctions in a Proceedings Related to the Yellowstone Club ...12

        C.      Misleading  Statements in Submissions to This Court
                in a Related Proceeding.......................................................13

        D.      The Recusal Hearing ...........................................................15

        E.      The Declaration ..................................................................18

IV.     Conclusion ..............................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities)*,
    218 F.3d 109 (2d Cir. 2000) ................................................................4

*Blixseth v. Marc S. Kirschner, Trustee of the Yellowstone Club Liquidating Trust*,
    436 B.R. 598 (Bankr. D. Mont. 2010) ...................................................9

*Blixseth v. Yellowstone Mt. Club, LLC (In re Yellowstone Mt. Club, LLC)*,
    2012 U.S. Dist. LEXIS 164386 (D. Mont. Nov. 16, 2012) ............................ 2-3

*Browning v. Kramer*,
    931 F.2d 340 (5th Cir. 1991) ...............................................................22

*In re Coquico, Inc.*,
    Case No. 13-16049 (Bankr. E.D. Pa. April 2, 2014) ........................................14

*Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001) .................................................................6

*Gadda v. Ashcroft*,
    377 F.3d 934 (9th Cir. 2004) ............................................................5, 8

*Grove Fresh Distribs., Inc. v. John Labatt, LTD*,
    299 F.3d 635 (7th Cir. 2002) .................................................................7

*New Alaska Dev. Corp. v. Guetschow*,
    869 F.2d 1298 (9th Cir. 1989) ...............................................................5

*Pac-Tec, Inc. v. Amerace Corp.*,
    903 F.2d 796 (Fed. Cir. 1990) ...............................................................7

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
    115 F.3d 644 (9th Cir. 1997) .................................................................6

*In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*,
    278 F.3d 175 (3d Cir. 2002) .................................................................5

*Roadway Express, Inc. v. Piper*,
447 U.S. 752 (1980) ................................................................. 6

*Save the Peaks Coalition v. United States Forest Serv.*,
683 F.3d 1140 (9th Cir. 2012) ............................................ 5-6

*SEC v. Loving Spirit Found.*,
392 F.3d 486 (D.C. Cir. 2004) ................................................ 9

*Thomas v. Girardi*,
611 F. 3d 1027 (9th Cir. 2010) ........................... 6-10, 17, 22

*United States v. Nelson (In re Becraft)*,
885 F.2d 547 (9th Cir. 1989) .................................................. 7

*Urban v. Commissioner*,
964 F.2d 888 (9th Cir. 1992) .................................................. 7

*In re Yellowstone Mt. Club*, LLC,
2011 Bankr. LEXIS 663 (Bankr. D. Mont. Feb. 25, 2011) ................. 3

## Statutes

28 U.S.C. § 360(a) .................................................................. 20

28 U.S.C. § 1927 ............................................................. 5-6, 13

## Other Authorities

Fed. R. App. P. 38 .............................................................. 6-7

Fed. R. App. P. 46 ................................................................. 8

Fed. R. Bankr. P. 9024 ................................................... 13-14

Idaho R.P.C 3.3 ................................................................... 13

D. Mont. L.R. 83.1(d)(3)(G) ............................................... 11

Appellees the Debtors, Yellowstone Mountain Club, LLC, *et al.*, together with CrossHarbor Capital Partners, LLC and CIP Sunrise Ridge Owner LLC (collectively, "Appellees") hereby reply to the response of Michael J. Flynn ("Flynn") to this Court's Order to Show Cause.

## I.     INTRODUCTION

Flynn is the architect of Blixseth's three-year campaign to smear Judge Kirscher. Flynn urged the filing of the underlying Motion to Disqualify. *See* Declaration of Michael J. Flynn in Support of Response to Order to Show Cause (the "Declaration") at ¶ 4 ("I concluded that it was our sworn duty to file said motion"). He alone argued the recusal motion in the bankruptcy court. At argument and in the underlying pleadings, he repeatedly impugned the integrity of the bankruptcy court with false statements relating to Judge Kirscher's character.

Although Flynn sought actively to participate in the appeal before the district court, he failed to disclose his record of sanctions in his application to appear *pro hac vice* ( the "Application") and withdrew the Application rather than explain this omission to the district court.

Flynn played a pivotal role in the frivolous appeal (the "Frivolous Appeal") that resulted in the Order to Show Cause. Besides participating in the Frivolous Appeal, Flynn filed a scandalous and frivolous judicial complaint against Judge Kirscher, as well as undertaking an effort to prevent this Court's re-appointment of

Judge Kirscher. For Flynn, disqualifying Judge Kirscher from hearing Yellowstone Club matters was not enough. He sought to deprive a distinguished jurist of a continuing career on the bench. He supplemented the baseless allegations raised in his complaint with additional false statement and documents. He even accused the Chief Judge of this Court of corruption.

Throughout his and Blixseth's personal jihad, Flynn has attempted to portray the bankruptcy court as a den of corruption. To do so, he has repeatedly referred to supporting "evidence," which in fact is nothing more than bad faith conjecture and surmise.[1] For example, Judge Kirscher presided over the auction of the Yellowstone Club's assets. During the course of the auction Judge Kirscher met with the interested parties and their counsel. Despite the fact that neither Flynn nor

---

[1] As Judge Haddon observed:

> . . . the factual assertions advanced by Blixseth, both before Judge Kirscher and in this appeal, are grounded in his self-serving affidavits which he claims must be accepted as true. He is mistaken. The Court is not obliged to adopt, and does not adopt, the assertions of fact in the affidavits as true. Moreover, many of the assertions of "fact" recited by Blixseth simply cannot be reconciled with the record. To give weight to such unsupported, or outright contradicted by the record, declarations would be entirely unwarranted.

*Blixseth v. Yellowstone Mt. Club, LLC (In re Yellowstone Mt. Club, LLC)*, 2012 U.S. Dist. LEXIS 164386, at *4 (D. Mont. Nov. 16, 2012) (internal citations omitted). In the Frivolous Appeal and in response to the Order to Show Cause, Flynn repeats these "factual assertions."

Blixseth attended these meetings and none of the participants has ever been subject to Flynn's examination, Flynn repeats *ad nauseum* the contention that the purpose of any meetings was to conspire to persecute Blixseth.[2]  Other examples of Flynn's reckless mudslinging are evident throughout his submissions to this Court.[3]

Flynn's bad faith is apparent at every stage of his three-year campaign to slander and harass Judge Kirscher.  The purpose of this campaign has been to further Blixseth's attempts to avoid the consequences of looting the Yellowstone Club.[4]  Flynn has never let any ethical scruples or sense of professional responsibility stand in the way of his attempts to undermine the bankruptcy court.

---

[2]  Judge Kirscher had one brief meeting with the Debtors, the Creditors' Committee, the Ad Hoc Committee of Yellowstone Club members and the two bidders to discuss the bidding status and procedures.  *In re Yellowstone Mt. Club*, *LLC*, 2011 Bankr. LEXIS 663, at * 50-51 (Bankr. D. Mont. Feb. 25, 2011).  Blixseth was not a bidder and was therefore not included.  *Id.* at *51.  All formal proceedings relating to the auction took place in open court and were noticed in advance on the bankruptcy court's electronic case filing system.  *Id.* at *45-46.

[3]  Flynn and Blixseth's overreaching was not limited to creating "evidence."  Before the district court, they argued unsuccessfully that the court should view Judge Kirscher's actions from "the perspective of a reasonable person who is predisposed to suspicions about the inner workings of the judiciary."  The district court found that this "standard" is "so lacking in specificity as to be incapable of meaningful interpretation."  *Blixseth*, 2012 U.S. Dist. LEXIS 164386 at *3 n.4.

[4]  For example, in their Reply Brief in Support of Blixseth's appeal from the Confirmation Order (Case No. 13-35190), Flynn and his co-counsel argued:

> . . . Appellees make gratuitous and irrelevant attacks on Blixseth based on the supposed findings suggesting that Blixseth looted the Club.  Aside from being irrelevant

This Court should, at a minimum, impose a substantial fine upon Flynn and require him to pay Appellees' counsel fees as a sanction for his historic bad faith and as a deterrent to such egregious future misconduct. *See 60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities)*, 218 F.3d 109, 117 (2d Cir. 2000) (holding that "bad faith here may be inferred from the clear lack of merit of the claims . . . and the numerous attempts to impugn the integrity of a federal judge and fellow attorney through totally unsubstantiated abusive and slanderous statements.") (emphasis added).

## II. THE BASES AND STANDARDS FOR GRANTING SANCTIONS

There are multiple bases to impose sanctions upon Flynn. This Court has already made a finding that Blixseth's appeal was frivolous. In the Order to Show Cause, this Court found that the grounds for Blixseth's appeal "are wholly without merit." Order to Show Cause at 1. Further, the pursuit of the appeal, and Flynn's pattern of conduct set forth below, supports a finding of bad faith arising from intentional (or, at a minimum, reckless) misconduct.

---

here, *those findings are currently on appeal, are clearly erroneous, were made by a bankruptcy judge, who was not reappointed* and completely ignored that use of the Credit Suisse loan proceeds was done to expand the Yellowstone Club brand worldwide.

Reply Brief at 56 (emphasis added).

## A.    28 U.S.C. § 1927

Section 1927 provides a court with the authority "to hold attorneys personally liable for "excess costs, expenses and attorney's fees reasonably incurred" because of unreasonable and vexatious conduct that unreasonably "multiplies the proceedings."   28 U.S.C. § 1927; *Save the Peaks Coalition v. United States Forest Serv.*, 683 F.3d 1140, 1142 (9th Cir. 2012) (citing *Gadda v. Ashcroft*, 377 F.3d 934, 943 n.4 (9th Cir. 2004)).   "Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Id*. (citing *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989)).   "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent."  *Id*. (citation omitted).   "Tactics undertaken with the intent to increase expenses, or delay, may also support a finding of bad faith."  *Id*. (internal citations omitted).   Indeed, this Court has held that "[e]ven if an attorney's arguments are meritorious, his conduct may be sanctionable if in bad faith." *Id*. (citation omitted).[5]

A "finding that the attorneys recklessly raised a *frivolous* argument which resulted in the multiplication of the proceedings is  . . . sufficient to impose

---

[5] Meritless attempts to disqualify a presiding judge have resulted in sanctions under Section 1927.  *See, e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*, 278 F.3d 175, 190 (3d Cir. 2002).

sanctions under § 1927." *Thomas v. Girardi*, 611 F. 3d 1027, 1067 n.53 (9th Cir. 2010) (emphasis in the original) (citations omitted). In the context of section 1927, "frivolousness should be understood as referring to legal or factual contentions so weak as to constitute objective evidence of improper purpose." *Id*. at 1062.

**B.      This Court's Inherent Powers**

This Court has "the inherent power to sanction a losing party who 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose.'" *Id*. (citing *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001)). Under this inherent power, "a court 'certainly may assess [sanctions] against counsel who willfully abuse judicial processes.'" *Fink*, 239 F.3d. at 991 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)). To award sanctions, "the court must make an explicit finding that counsel's conduct constituted or was tantamount to bad faith." *Save the Peaks Coalition*, 683 F.3d at 1143 (citing *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997)). A finding of bad faith is warranted where an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id*.

**C.      Federal Rule of Appellate Procedure 38**

Rule 38 permits this Court to award "just damages and single or double costs to the appellee" in connection with a "frivolous appeal." Fed. R. App. P. 38; *see*

*Urban v. Commissioner*, 964 F.2d 888, 890 (9th Cir. 1992) ("We have discretion to impose sanctions against litigants, even *pro se*, for bringing a frivolous appeal"). Courts have awarded attorney's fees under this rule as a sanction for a party's frivolous appeal of an order denying judicial recusal. *See*, *e.g.*, *Pac-Tec, Inc. v. Amerace Corp.*, 903 F.2d 796, 804 (Fed. Cir. 1990) (imposing attorneys' fees sanction under Fed. R. App. P. 38 in part for frivolous appeal of order denying recusal where allegations of bias were "outrageous fabrication made of whole cloth"); *see also*, *Grove Fresh Distribs., Inc. v. John Labatt, LTD*, 299 F.3d 635, 642 (7th Cir. 2002) (sanctions imposed under Fed. R. App. P. 38 for frivolous appeal of order denying recusal where movant "failed to establish any basis for recusal in the first place").

The mere filing and pursuit of a frivolous appeal is grounds for sanctions under Rule 38. *Thomas*, 611 F.3d at 1065 n.53. This Court has already determined that Blixseth's appeal was frivolous. Under Rule 38, bad faith, while relevant, is not required to impose sanctions. *United States v. Nelson (In re Becraft)*, 885 F.2d 547, 549 (9th Cir. 1989) ("While a finding of bad faith is not necessary to impose sanctions under Fed. R. App. P. 38 . . . , the fact that [appellant] likely filed the petition for hearing absent a good faith belief of its justification contributes to our strong conviction that [appellant's] conduct warrants the imposition of sanctions.") (internal citations omitted).

**D.     Federal Rule of Appellate Procedure 46(c)**

Rule 46(c) authorizes this Court to discipline an attorney who practices before it "for conduct unbecoming a member of the bar or for failure to comply with any court rule." Fed. R. App. P. 46(c). This Court has held that it "need not find intentional conduct to discipline an attorney for conduct unbecoming a member of the bar pursuant to Federal Rule of Appellate Procedure 46; lack of diligence that impairs the deliberations of the court is sufficient." *Thomas*, 611 F.3d at 1035 (citing *Gadda*, 377 F.3d at 947).

In considering sanctions under Rule 46, this Court may consider a broad array of factors. In *Thomas*, the Court explained:

> "Conduct unbecoming a member of the court's bar" means "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice." *In re Snyder*, 472 U.S. 634, 645, 105 S. Ct. 2874, 86 L. Ed. 2d 504 (1985); *see also Gadda*, 377 F.3d at 946. In addition to case law and applicable court rules, the court may consider codes of professional conduct in determining whether an attorney's conduct falls below the standards of the profession. *See In re Snyder*, 472 U.S. at 645, 646 n. 7 (referring to state rules of professional conduct, and the American Bar Association's ("ABA") Model Rules of Professional Conduct and Model Code of Professional Responsibility)[hereinafter, the "ABA's Model Rules"].

*Thomas*, 611 F.3d at 1035. In *Thomas*, the Court awarded sanctions after finding that counsels' conduct (*e.g.*, continuing to pursue appeal despite false nature of

underlying evidence) constituted "'conduct unbecoming a member of the court's bar,' which, *inter alia*, violated the ABA's Model Rules as well as California rules of professional conduct." *Id.*; *see also*, *SEC v. Loving Spirit Found.*, 392 F.3d 486, 496 (D.C. Cir. 2004) (entering show cause order pursuant to Fed. R. App. P. 38 and 46 where appellant appealed order denying recusal and included false statements purporting to show bias in recusal motion and opening brief).

As set forth further below, Flynn should be sanctioned for engaging in a broad range of conduct "unbecoming a member of the court's bar." *Thomas*, 611 F.3d at 1035.[6]

### III. FACTS SUPPORTING AN AWARD OF SANCTIONS

Flynn's pursuit of the Frivolous Appeal, together with the aggravating circumstances set forth below, supports the imposition of sanctions.

---

[6] The YCLT initated an adversary proceeding against Blixseth to recover the funds which Blixseth looted from the Yellowstone Club. Flynn defended Blixseth. The bankruptcy court found against Blixseth. *See Blixseth v. Marc S. Kirschner, Trustee of the Yellowstone Club Liquidating Trust,* 436 B.R. 598, 606 (Bankr. D. Mont. 2010). The district court affirmed. In its opinion, the district court noted that its review of the record revealed that the "[t]actics of some witnesses and *some counsel*, which were at best ill advised, and, more realistically*, deliberately misleading*, plainly added to the [bankruptcy] court's tasks and frustrations in addressing issues before it." *Id*. at 8 (emphasis added).

A.    **Prior Disciplinary Proceedings**[7]

Flynn is no stranger to disciplinary proceedings:

•      In the matter *In re Estate of L. Ron Hubbard*, No. 47150 (Cal. Super. Ct. (Riverside) 1983), Flynn was held "in contempt of a court order" and fined $250.[8]

•      In the matter *Flynn v. Montgomery (In re Montgomery),* No. 09-ap-01482-BB, Dkt. 16 (Bankr. C.D. Cal. March 5, 2010), sanctions were imposed upon Flynn in the amount of $250.[9]

•      In the matter *Flynn v. The State of Florida, et al.,* Case No. 82-1285 (Fla. 5th Dist. Ct. App. 1982), the court entered an order holding Flynn in criminal contempt, imposing upon him a fine of $100 and sentencing him to 10 days in the County Jail.[10]

This last order was later vacated.  However, the finding of contempt was required to be disclosed to the district court hearing the Frivolous Appeal when

---

[7] In *Thomas*, this Court held that, in determining sanctions, the court may consider "the ABA's Standards for Imposing Lawyer Sanctions [hereinafter, "ABA Standards"], which were promulgated to aid enforcement of [the ABA's Model Rules]."  611 F.3d at 1035-36.  Under the ABA Standards, "prior disciplinary offenses" are an "aggravating circumstance."  ABA Standards at § 9.22(a).

[8] Appellees' Appendix in Support of the Replies to Order to Show Cause (referenced hereinafter as "A" followed by the appropriate page number) at A559.

[9] A555.

[10] A561.

Flynn filed an application (the "Application") for admission to that court *pro hac vice*.[11]  In fact, Flynn concealed his entire disciplinary history when he filed the Application.[12]

Appellees' counsel advised Flynn's co-counsel, Fox, of the omissions.  In an amended filing, Flynn sought to explain his failure to disclose his prior sanctions history.[13]  The district court entered an order requiring Flynn to explain his omissions and to provide to the district court all relevant documents related to the belatedly disclosed sanctions.[14]  In response, Flynn and Conant submitted pleadings and declarations which attempted to minimize the sanctions.[15]

Appellees filed an objection to the Application on the grounds that Flynn's original filing violated the Montana Rules of Professional Conduct and the district

---

[11] *See* D. Mont. L.R. 83.1(d)(3)(G).

[12] *See* A122.  Flynn and Fox have omitted Flynn's sanctions history in other *pro hac vice* applications.  *See e.g.*, Flynn's *pro hac vice* applications in the following proceedings: (a) *Kirschner v. Desert Ranch LLLP* (*In re Yellowstone Mountain Club, LLC*), Case No. 11-0043-BU-SEH (D. Mont. Sept. 29, 2011), A233; (b) *Samson v. Blixseth* (*In re Edra D. Blixseth*), Case No. 11-0045-BU-SEH (D. Mont. Sept. 29, 2011), A239; and (c) *Samson v. Blixseth* (*In re Edra D. Blixseth*), Case No. 11-0046-BU-SEH (D. Mont. Sept. 29, 2011), A245.  In each of these *pro hac vice* applications, Fox, based upon Flynn's declaration, represents that Flynn has never been sanctioned.  Upon information and belief, none of these applications has been amended or withdrawn.

[13] A133.

[14] A136.

[15] A138-A146.

court's local rules, and that his subsequent ameliorative declarations remained incomplete and misleading.[16] Flynn filed a reply to Appellees' objection, maintaining that it was not misleading or untrue for Flynn to declare under penalty of perjury that he had never been held in contempt of court.[17]

Appellees thereafter provided the district court with notice of an *additional* sanction which Flynn had failed to disclose in the Application or subsequent explanations.[18] As a result, the district court ordered Flynn and Fox to appear personally at a hearing.[19] On the eve of the hearing, rather than appear, Flynn withdrew the Application.[20] The district court later vacated the hearing.[21]

## B. Prior Sanctions In A Proceeding Related to the Yellowstone Club

Flynn, Conant and Stillman filed an action on behalf of Blixseth's son Beau Blixseth and others in the matter *Gibson v. Credit Suisse AG*, Case No. 1:10-cv-00001- EJL (D. Idaho). In their complaint, they alleged that Credit Suisse AG and

---

[16] A147.

[17] A164.

[18] A174.

[19] A181.

[20] A183.

[21] A231. Although Flynn's concealment of his disciplinary history did not result in sanctions, it evidences a "pattern of misconduct," which this court may consider as an "aggravating factor." ABA Standards at § 9.22(c).

others engaged in a pattern of "deceptive and illegal conduct" in connection with the issuance of certain loans, including the loan to the Yellowstone Club (the proceeds of which Blixseth looted).[22]

In opposition to a motion to dismiss, Flynn, Conant and Stillman submitted an unsigned declaration of an alleged "whistle blower," Michael J. Miller. The district court later determined that Flynn, Conant and Stillman had been in possession of a signed declaration of Mr. Miller which was materially different (in a manner unfavorable to their position) from the unsigned declaration. Flynn and his co-counsel concealed this signed declaration from defense counsel and from the district court. The district court fined Flynn, Conant and Stillman $6,000 as sanctions pursuant to "the inherent powers of the Court, Idaho Rule of Professional Conduct 3.3, and 28 U.S.C. § 1927."[23] In addition, they were ordered to pay opposing counsel's fees relating to the sanctions proceedings.[24]

## C. Misleading Statements In Submissions To This Court In a Related Proceeding

After Judge Kirscher entered a judgment against Blixseth and denied Blixseth's recusal motion, Blixseth sought to amend that judgment pursuant to Federal Rule of Bankruptcy Procedure 9024 (the "Rule 9024 Motion"). Judge

---

[22] A251.

[23] A332-A359.

[24] *Id.*

Kirscher scheduled a hearing on this motion.

Prior to that hearing, Blixseth filed an Emergency Motion Under Circuit Rule 27-3 to Stay Proceedings (the "Emergency Motion").[25] Flynn argued that "newly discovered" evidence further supported Judge Kirscher's recusal and that Judge Kirscher should not be the trier of factual issues relating to his own bias. Blixseth sought a stay before this Court. Flynn, Conant, Stillman and Ferrigno appeared on his behalf.[26] As set forth in the YCLT's Response to the Emergency Motion,[27] the Emergency Motion included exhibits that were demonstrably false and asserted allegations that were wholly without merit.[28]

This Court denied the Emergency Motion. Thereafter, in an apparent attempt to avoid having Judge Kirscher review the altered exhibits identified above at a hearing scheduled for September 10, 2013, on September 5, 2013, Blixseth withdrew his Rule 9024 Motion.

---

[25] A001-A026.

[26] Notably, Fox was Blixseth's local counsel in connection with the Rule 9024 Motion, but declined to appear on the Emergency Motion before this Court.

[27] A035-A057.

[28] Despite being on notice that these exhibits were false, Flynn includes them in the Declaration. *Compare* Exhibits to the Emergency Motion (A027 and A028) and Exhibits 1, 2 and 7 of the Declaration. Citing this "evidence" alone supports the imposition of sanctions. *See In re Coquico, Inc.*, Case No. 13-16049 (Bankr. E.D. Pa. April 2, 2014) (imposing sanctions against counsel for "later advocating a position after learning that the position no longer has merit.") (internal quotation omitted).

### D.    The Recusal Hearing

The recusal hearing before the bankruptcy court commenced on January 18, 2011 (the "Recusal Hearing").  Notably, prior to the hearing and after parties began to file exhibit lists, Flynn objected to the introduction of evidence at the hearing, arguing, "no evidentiary hearing is required for this Court to judge for itself whether the grounds set forth in the Disqualification Motion justify recusal."[29] Flynn turned the hearing into a torrent of personal attacks on Judge Kirscher, combined with fantastical allusions to terrorism and national security.

For example, Flynn:

•    argued that Blixseth walked into what is, in effect, prejudged judicial proceedings;[30]

•    characterized the proceedings as "this whole charade";[31]

•    represented that a business associate ("Montgomery") of Blixseth's wife, Edra, was decoding al-Qaeda messages "when they went to Vice President Cheney's office";[32]

---

[29] A515.  Flynn's position is ironic given the fact that he has submitted numerous documents in response to the Order to Show Cause, all of which he characterizes as "evidence," but none of which has been subject to challenge in an evidentiary hearing.

[30] A501.

[31] A502.

[32] A508.

• argued (with regard to the bankruptcy court) that "it's like a kangaroo court has been set up and prearranged";[33]

• contended that the allowance of a claim of a creditor ("di Silvestri") was "just completely fraudulent";[34]

• stated that "what this Court did is it got a room at the Crowne Plaza Hotel, then it conducted *ex parte* communications with parties at the Crowne Plaza Hotel during the supposed, so-called bidding procedures";[35]

• argued that "after five days of trial which Mr. Blixseth had roughly 30 days to prepare, this Court ruled in June 2009 and basically prejudged Mr. Blixseth's credibility. Basically said that he was not credible";[36]

• argued that "this Court was boxed in in all subsequent proceedings, including the AP-14 rulings, to basically attach Mr. Blixseth, bootstrap up Ms. Blixseth and Mr. Byrne, ignore all this mountain of evidence. And that is what the Court has done";[37]

---

[33] A510.

[34] A514.

[35] A515.

[36] A519.

[37] A537.

- made references to Montgomery's fraudulent "fake target coordinates on the Obama inauguration";[38]

- argued that Edra Blixseth "with [Jack Kemp] and other politicians, [were] trying peddle . . . fraudulent technology to our Government using the terrorist threat outrageously to extract taxpayer moneys;[39] and

- concluded that the bankruptcy court was "buffaloed".[40]

Flynn's behavior at the Recusal Hearing set the tone for what was to follow, including the Frivolous Appeal. Moreover, it is evidence of his intentional use of those proceedings to smear Judge Kirscher and to undermine the authority of the bankruptcy court. *Thomas*, 611 F.3d at 1036 ("Although we are concerned here only with Respondents' conduct in this court, the entire course of Respondents' effort to enforce the Nicaragua judgment is relevant to determining Respondents' culpability.").

---

[38] A544.

[39] A546.

[40] A549.

## E.      The Declaration[41]

Flynn has submitted the Declaration  in support of his response to the Order to Show Cause.  However, rather than exculpating him, the Declaration supports a finding of "a pattern of misconduct" within the meaning of ABA Standards § 9.22(c).

For example, Exhibit 4 to the Declaration is a letter which Flynn, Stillman and Conant submitted to the Public Integrity Section of the Department of Justice. The letter requests an "Investigation of Montana Political and Judicial Corruption." Flynn requests all documents relating to governmental "'targeting' of Mr. Blixseth by the [Attorney General Eric Holder and Assistant Attorney General Lanny Breur] controlled Department of Justice."   Further, Flynn contends that:

- Attorney General Eric Holder, Assistant Attorney General Lanny Breur and others,  have "targeted" Mr. Blixseth for persecution in matters related to the Yellowstone Club (*Id*. at 3);

---

[41] The Declaration and "supporting" exhibits comprise 69 pages.  He has arguably used the Declaration to avoid the limits (5,000 words) set forth in the Order to Show Cause.  These limits preclude Appellees from rebutting all of the factual contentions set forth in the Declaration.  However, the excerpts addressed herein are representative of Flynn's bad faith contentions.  Notably, his co-counsel Conant and Stillman adopt each other's response and Ferrigno's  response to the Order to Show Cause, but omit all reference to Flynn's response.  *See* Conant Response at 1; Stillman Response at 1.

- a "cabal of private actors and public officials" conspired to conceal Edra Blixseth's alleged bank fraud under the "protection of Holder, Breur and Kirscher." (*Id*. at 3);

- in March 2008, Montana Governor Schweitzer and others engaged in a scheme to "make political donations to corrupt the bankruptcy judicial process." (*Id*. at 4-5);

- Judge Kirscher "approved a 'back room' deal after engaging in illegal *ex parte* meetings with a representative of CrossHarbor." *Id*. at 5. Part of this scheme involved exploiting "Judge Kirscher's connections to the Montana Democratic cabal, and more specifically his connections with specific lawyers and a specific law firm representing members of the [Yellowstone Club]." (*Id*. at 5);

- Judge Kirscher ultimately approved "an overtly illegal bankruptcy plan," thereby displaying a "reckless abuse of judicial power [that] has no place in America and is more akin to a country ruled by despots rather than a republic." (*Id*. at 6);

- Judge Kirscher "with full knowledge and participation in the Schweitzer/Burkle[42]/Breur 'political favors' campaign," issued his opinion finding that Blixseth had looted the Yellowstone Club. *Id*. at 8 (footnote added).

---

[42] Burkle is a member of the Yellowstone Club.

Exhibit 6 to the Declaration is a letter which he, Blixseth and Conant wrote to the Office of the Circuit Executive, United States Court of Appeals for the Ninth Circuit, on February 20, 2013, concerning "Reappointment of U.S. Bankruptcy Judge Kirscher."[43] In this letter, Flynn made the same arguments he raised in the Frivolous Appeal (*i.e.*, arguments that were "wholly without merit") in a bad faith attempt to block Judge Kirscher's reappointment.

Finally, Exhibit 7 to the Declaration is a letter which he wrote to the United States Judicial Conference and to the Office of the Circuit Executive, United States Court of Appeals for the Ninth Circuit, concerning "Complaint of Judicial Misconduct; Docket No. 13-90073." In this letter, Flynn contended that he had proved that "Judge Kirscher had been overtly corrupted by Mr. Blixseth's litigation opponents." *Id*. at 1. Further he argued that:

> Since Mr. Blixseth submitted this evidence to the Ninth Circuit, it appears that the Ninth Circuit, led by Chief Judge Kozinski, has realized that Judge Kirscher has engaged in serious judicial misconduct, or at a minimum, that serious questions concerning Judge Kirscher's fitness for office have emerged. This is clearly evidenced by the fact that Judge Kirscher sought but was denied reappointment to another 14-year term. However,

---

[43] Pursuant to 28 U.S.C. § 360(a), "all . . . documents . . . related to investigations conducted under this chapter shall be confidential and shall not be disclosed by any person in any proceedings." Blixseth and Flynn are aware of this restriction. *See* A005. Nonetheless, Flynn has publically disclosed a July 7, 2013 letter from Flynn and Blixseth concerning "Supplement to Complaint of Judicial Misconduct Docket No. 13-90073" which was attached to the Declaration.

> more troubling, yet reminiscent of Chief Judge
> Kozinski's and the Ninth Circuit Judicial Council's
> handling of district Judge Cebul's [sic] judicial
> misconduct, Chief Judge Kozinski and the Ninth Circuit
> Judicial Council have swept Judge Kirscher's judicial
> misconduct under the proverbial rug by effectively hiding
> Judge Kirscher's misconduct from the public and from
> review of the U.S. Judicial Conference.

In other words, Flynn has accused the Chief Judge of this Court of judicial
misconduct. *See* Code of Conduct for United States Judges, Canon 1 (establishing
standard of conduct to preserve integrity and independence of judiciary).

These scandalous and fantastical allegations demonstrate that the truth is no
barrier to Blixseth and Flynn's efforts to avoid the consequences of the judgment
which Judge Kirscher entered against Blixseth.

## IV. CONCLUSION

Flynn aggressively pursued the recusal motion and the Frivolous Appeal.
He boasts that he has practiced law for over forty years. However, in light of his
lengthy career[44] and presumed knowledge of the law, this Court should find that
his actions in pursuing the Frivolous Appeal (and related Judicial Complaints)
were intentional. At a minimum, they were reckless. Further, several aggravating
factors support the imposition of sanctions. Finally, Flynn's response to the Order
to Show Cause reveals that he remains defiant and willing further to besmirch

---

[44] Flynn's "substantial experience in the practice of law" may be considered as an
aggravating circumstance. ABA Standards at § 9.22(i).

Judge Kirscher's reputation by making baseless and scandalous allegations. Sanctions are appropriate to deter future misconduct.[45]

For the foregoing reasons, Appellees respectfully request that this Court impose sanctions upon Flynn in the form of (a) a fine of at least $5,000 and (b) an award of all fees, expenses and costs incurred by Appellees in responding to the Order to Show Cause,[46] together either with (c) an award of all fees, expenses and costs incurred by Appellees in connection with responding to all of Blixseth's and his counsel's efforts to recuse Judge Kirscher,[47] or in the alternative, (d) an award of Appellees' fees, expenses and double costs relating to the Frivolous Appeal.

---

[45] This Court may consider Flynn's "refusal to acknowledge [the] wrongful nature of [his] conduct" as an aggravating factor. ABA Standards at § 9.22(g).

[46] *Thomas*, 611 F.3d at 1067 n.53 (including fees and costs incurred in pursuing sanctions as part of fees and costs awarded).

[47] *See Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991) (the entire financial burden of an action's defense may be shifted where "the entire course of proceedings were unwarranted and show neither have been commenced nor persisted in").

Dated:  April 17, 2014

/s/ Michael R. Lastowski
Michael R. Lastowski (De. No. 3892)
DUANE MORRIS LLP
222 Delaware Avenue, Suite 1600
Wilmington, Delaware 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
Email: mlastowski@duanemorris.com

Paul D. Moore (Ma. No. 353100)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, Massachusetts 02110
Telephone: (857) 488-4200
Facsimile: (857) 488-4201
Email: pdmoore@duanemorris.com

*Attorneys for Appellee CrossHarbor Capital Partners, LLC and CIP Sunrise Ridge Owner LLC*

James A. Patten (Mt. No. 1191)
PATTEN, PETERMAN, BEKKEDAHL
& GREEN, PLLC
2817 2nd Avenue North, Suite 300
Billings, Montana 59101
Telephone: (406) 252-8500
Facsimile: (406) 252-9500
Email: apatten@ppbglaw.com

*Attorneys for Appellee Debtors Yellowstone Mountain Club, LLC, et al.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. Ap. P. 32 (a)(7)(C) and Ninth Circuit Rule 32-1, I certify that the Appellees' Reply to Michael J. Flynn's Response to Order to Show Cause is proportionally spaced in serif font (Times New Roman), has a typeface of 14 points, and contains 4,974 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), in accordance with the word limitation set forth in the Court's Order to Show Cause. This reply was prepared using Microsoft Word and the word count was determined using the Microsoft Word word count application.

Dated: April 17, 2014                    */s/ Michael R. Lastowski*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 17, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Michael R. Lastowski*
Michael R. Lastowski

DM3\2862952.15