# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NO. 12-35986

TIMOTHY L. BLIXSETH

Appellant,

v.

YELLOWSTONE MOUNTAIN CLUB, LLC
YELLOWSTONE DEVEOPMENT, LLC
BIG SKY RIDGE, LLC
YELLOWSTONE CLUB CONSTRUCTION CO., LLC

Appellees.

**MICHAEL J. FLYNN'S PETITION FOR REHEARING *EN BANC***

Appeal from the United States District Court for the District of Montana
Case No. 2:11-73-BU-SEH

Michael J. Flynn
Suite 800
15 Broad St.
Boston, MA 02109
mike@mjfesq.com

This proceeding involves one or more questions of exceptional importance to the administration of justice and therefore Appellant Michael J. Flynn requests a rehearing *en banc* pursuant to Federal Rules of Appellate Procedure 35(b). Mr. Flynn also invokes F.R.A.P. 46 (c) and Circuit Rule 46 – 2 (d), (e) and requests an evidentiary hearing.

The following are the issues impacting the administration of justice in this matter:

- Truth, undisputed fact, and law embodied in the appellate Record both in the underlying "appearance of bias" appeal, and in the Record opposing the OSC *versus* judicial power, distortions and omissions of fact, and an agenda of judicial protectionism to ignore truth, undisputed facts and applicable law. Mr. Flynn's due process and First Amendment rights for zealous advocacy are at issue in the panel's distortions of the Record opposing the OSC.

- The sacred duty of a lawyer to defend his client by challenging the demonstrable *"appearance"* of bias objectified by undisputed facts in his client's adversary proceeding which was decided without a jury or Article III court, but before a Montana, Article I bankruptcy judge. Mr. Flynn held a good faith belief that the law and the facts in this matter implicated issues then under review and subsequently decided by the Supreme Court in the epochal *Stern v Marshall* decision. Mr. Flynn held a good faith belief in defense of Mr. Blixseth that his client's entitlement to an Article III court and jury, specifically in the face of undisputed facts supporting the legal standard of "appearance of bias", could not

conceivably be deemed "frivolous." Mr. Flynn held a good faith belief that both his First Amendment rights to defend Mr. Blixseth and his rights to defend against the OSC warranted both oral argument in the "appearance of bias" appeal and his opposition to the OSC. *En Banc* review on that basis alone is a compelling need to protect zealous advocacy and diminish the spectre of judicial protectionism – a current threat to the administration of justice.

- Exercise of indiscriminate judicial power to protect the biased judge and deny the lawyer due process while sanctioning him without a hearing that would expose the truth and undisputed facts; and implicate the biased judge as well as the inclination of one or more members of this Court to protect the judge.

- Legitimate advocacy without fear of reprisal in our *adversarial* system of justice.

- The suspect procedures and facts – given the *undisputed and documented* evidence - involving the former Chief Judge's role in dismissing without investigation a Judicial Council complaint relating to the bankruptcy judge; and his self appointment on the "appearance of bias" appeal repeatedly stating at oral argument that "there was no judicial misconduct" (*see also* DktEntry No. 69, p.1) and ignoring the applicable standards for "appearance of bias." *See* DktEntry 68-1, p. 3; DktEntry No. 69, p.1. The procedures and facts in this OSC matter are particularly relevant in the context of the former Chief Judge's role in the Judge Cebul matter before the Judicial Council when comparing the facts in that matter to the facts involving the bankruptcy judge in this case and the issuance of the OSC against Mr. Flynn. Why is the former Chief Judge sanctioning,

2

punishing and destroying the reputation of Mr. Flynn when he was overturned in the Cebul matter for alleged judicial misconduct substantially less than demonstrated in the Record here before the Judicial Council and in the appearance of bias Record?

The undisputed facts in this appellate record supporting an appearance of bias are and were no less than shocking in the 44 year litigation experience of Mr. Flynn, who tried the underlying case before Judge Kirscher, and made the oral argument in this matter; and to the four other attorneys representing Mr. Blixseth who did the appellate briefing. Mr. Flynn was not on the briefing but he has been selectively sanctioned purportedly for his oral argument in what the panel has concluded was a "frivolous appeal." Mr. Flynn respectfully requests the court to review the audio recording of the oral argument; and to review the *undisputed* facts supporting the appeal; and to review the facts before the Judicial Council which led to his decision to file an appearance for purposes of oral argument. See DktEntry Nos. 78-1 to 78-9, 98-1 through 98-8;

The undisputed facts governing Mr. Flynn's decision to file a motion for disqualification and to support the briefed appeal by experienced appellate lawyers in oral argument based on the applicable legal standard of "appearance of bias" are:

1. Judge Kirscher's law clerk – his right hand assistant present throughout the proceedings - giving her home and cell phone numbers to provide an exclusive - what the panel called a "service" - to Mr. Patten, Mr. Blixseth's primary opponent. He represented the Yellowstone Club and effectively

3

represented Mr. Blixseth's ex wife, Edra, who together with her financial partner, Sam Byrne, filed the Yellowstone Club bankruptcy to "pre package" a previously schemed result using the Montana Bankruptcy Court. Law clerk email exchange at ER 587, 588, 592 (see also ER 590); DktEntry 98-8.

2. Edra Blixseth's statements to her attorney that **"enormous capital and political favors to ensure they get the right outcome from the Montana Bankruptcy Judge"** (emphasis added) were forensically proven through expert testimony analyzing her computer – which evidence was relied upon by Mr. Flynn in the comprehensive context of a mountain of additional evidence. DktEntry 52-1, ECF p. 19-21; DktEntry 52-2, ECF p. 34, 35, 42-54, 65-66, 68-90; DktEntry 56, ECF p. 2-3, 8, 14-17, 39-40, 42-44, 54-86. Notwithstanding this forensic proof, the panel (presumably authored by the former Chief Judge given his role in this matter on the Judicial Council complaint) made the peculiar, baseless suggestion that it was "forged". The Edra Blixseth statement reads in its entirety: "**We need this case [the divorce case] moved back to Montana at all costs. SB [Sam Byrne] and BS [Brian Schweitzer – then Montana Governor] have spent enormous capital and political favors to ensure they get the right outcome from the Montana bankruptcy judge. I suspect TB [Tim Blixseth] and MF [Mike Flynn] have known this for some time, and gave up fighting that battle**." DktEntry 52-2, ECF p. 34. Mr. Flynn sought an actual evidentiary hearing under Rule 46 on this matter. It was denied.

3. Judge Kirscher's emails on his Worden Thane email account – his previous law firm then representing multiple parties in the Yellowstone Club

4

bankruptcy to whom he awarded $22 million without trial and without a mandated hearing. DktEntry 78-1, ECF p. 5, ¶ 3; DktEntry 78-2 § 13; DktEntry 52-2, ECF p. 135; Mr. Flynn sought to subpoena these emails in a Rule 46 hearing, which the panel denied. See DktEntry 98-1, ECF p. 11-13.

4. Judge Kirscher's law clerk, Terry Healow had an *ex parte* communication with Mr. Blixseth's opponent wherein Mr. Healow advocated Mr. Blixseth's opponent to hurry up and finalize a settlement with Mr. Blixseth before Mr. Blixseth could renege on the settlement. ER 69-71. At oral argument, the Chief Judge arbitrarily said this *ex parte* communication "never occurred." However, that is *not* what the appellate record shows. Rather, it shows that Judge Kirscher *never* denied that the *ex parte* communication of Terry Healow occurred; Judge Kirscher admits that it occurred but denied responsibility. ER 71. That response by Judge Kirscher alone legitimizes Mr. Flynn's good faith belief that this *ex parte* communication did in fact occur.

5. It is uncontroverted that Judge Kirscher participated in *ex parte* settlement discussions with Mr. Blixseth's adversaries without the presence of Mr. Blixseth's counsel including Mr. Flynn. Based on the *ex parte* discussions, Judge Kirscher then approved a bankruptcy plan solely targeting Mr. Blixseth, which then resulted in the $40 million judgment issued by the same Article I judge against Mr. Blixseth in order to fulfill the plan he approved based on *ex parte* communications. Based on his 44 year litigation experience, Mr. Flynn held a good faith belief that *this* reeked of apparent bias.

6. The senior Montana bankruptcy judge participating in the

5

Yellowstone Club bankruptcy sent an email *months before the trial of the Blixseth adversary proceeding* providing case citations to the same Mr. Patten to be used against Mr. Blixseth! ER 590. Mr. Flynn's justified reaction to these shocking *ex parte* communications by the senior bankruptcy judge justified the appeal of the motion to disqualify for an "appearance of bias." The panel then concluded the appeal was frivolous and subsequently selectively sanctioned Mr. Flynn. The question for this court is can such indiscriminate abuse of judicial power go unreviewed?

That the Chief Judge would sanction Mr. Flynn for prosecuting an appeal to disqualify a bankruptcy judge on these facts raises the following questions of exceptional importance in the administration of justice.

1. Does the denial of a hearing by the former Chief Judge mandated by Circuit Rule 46 - 2 involving the following issues and facts warrant *en* banc review: (a) review and analysis of the undisputed *ex parte* communications as mandating disqualification; (b) review and analysis of the concealed emails of Judge Kirscher with his former law firm, which would be subpoenaed for the denied hearing; (c) authentication of the alleged "forged" documents – claimed to be "forged" by Judge Kosinski – although previously admitted to be authentic by their author, Edra Blixseth, and forensically authenticated from her computer by unrefuted expert testimony. The most critical, already authenticated document – another fact concealed by the former Chief Judge – states: **"I think this helps us to justify why we are filing our motions on the MSA in the BK courts in Montana, don't you? Remember we have added help there from the BK**

**Judge who loves us, and hates Tim and Mike Flynn. At this point they could not get a decent ruling in their favor from that Judge if they tried. Either way, SB and BS <u>have things in place in that courtroom to help us</u>**." DktEntry 52-1, ECF p. 19-21; DktEntry 52-2, ECF p. 90, 42-54, 65-66, 68-90; DktEntry 56, ECF p. 2-3, 8, 14-17, 39-40, 42-44, 54-86.

    2.    Does the former Chief Judge's dual role and conduct of dismissing a judicial misconduct complaint (See Ninth Circuit Docket No. 13-90073) against Judge Kirscher *without investigation* into documented facts submitted to the Judicial Council, while appointing himself to the head of the appearance of bias appeal panel, in effect quashing all independent appellate review of blatantly improper conduct by Judge Kirscher, but sanctioning Mr. Flynn for advocating for due process for his client warrant *en banc* review, specifically considering Judge Kosinski's role in the Cebul judicial misconduct matter?

    3.    Does the irrefutable Record and totality of the evidence in both the appearance of bias appeal and the Judicial Council submissions establishing improper judicial protectionism by Judge Kosinski of Judge Kirscher (See Ninth Circuit Docket No. 13-90073) ostensibly based upon political favoritism, and other inferential biases, warrant *en banc* review? The obvious political football issues in the Cebul matters and Judge Kosinski's role in that matter when compared to the evidence of judicial misconduct in this matter strongly suggest improper decision making by Judge Kosinski based upon political or other improper considerations.

    With these issued framed, the primary questions of exceptional importance for the full panel to consider is whether an attorney may be sanctioned under 28

U.S.C. § 1927 for prosecuting an allegedly "frivolous appeal" of a denial of a motion to disqualify a bankruptcy judge when it is undisputed that the bankruptcy judge, his co-bankruptcy judge and the bankruptcy judges' law clerks, engaged in numerous, undisputed *ex parte* communications with the attorney's adversary concerning the pending litigation, even going so far as to provide the sanctioned attorney's adversary with case citations and the law clerk's cell phone and home phone numbers so that the attorney's adversaries could contact the bankruptcy judge on the weekends and after hours to discuss the underlying case; and provide inside information to "get their money from Blixseth" before Judge Kirscher renders a decision. See ER 69-71, 590, 587, 588, 592.

These issues are intertwined with constitutional due process and First Amendment concerns involving the denial of a hearing relating to Mr. Flynn's appearance at oral argument on appeal after acting as trial counsel who observed Judge Kirscher's conduct and relied upon the critical, concealed, prohibited *ex parte* communications which supported his observations at trial, (DktEntry 98-2, ¶ 12); and relied upon issues of law which were then in flux with applicable changes in the law made by the Supreme Court in *Stern v Marshall* entitling Mr. Blixseth to an Article III court and jury. Mr. Flynn now believes but does not know without a hearing whether he is being selectively sanctioned *in the appearance of bias* appeal – which cannot possibly be deemed "frivolous;" or for his opposition to the OSC; or for raising issues of fact and law *which he in good faith relied upon,* in connection with the Judicial Council proceedings. In other words, on what basis is Mr. Flynn being sanctioned? The panel says for oral argument on a frivolous

8

appeal but ambiguously reference matters outside the appearance of bias appeal involving Mr. Flynn's good faith beliefs derived from the Judicial Council proceedings *which are part of the OSC Record.* Mr. Flynn respectfully requests the full court to decide whether the former Chief Judge presiding over all these matters in the totality of all these circumstances should impose sanctions for a "frivolous appeal" under the "appearance of bias" standard, without compliance with the due process and First Amendment safeguards of Rule 46?

The above facts also raise questions of exceptional importance governing the interplay between a judge's required disqualification under 28 U.S.C. § 455 combined with a pending complaint of judicial misconduct against that same judge under 28 U.S.C. § 352 and the same appellate judge appointing himself through his position of Chief Judge presiding over both. The above undisputed facts involving *ex parte* communications would normally result in not only disqualification of the judges and law clerks at issue, but would result in judicial discipline against these court officers – the subject of the Judicial Council proceedings. These facts indisputably raised an *appearance* of bias; but the former Chief Judge appears to be sanctioning Mr. Flynn for the Judicial Council (Ninth Circuit Docket No. 13-90073) proceedings while claiming the appeal was "frivolous."

Specifically, Mr. Flynn submitted a complaint of judicial misconduct against Judge Kirscher that brought to the Council's attention evidence in the form of authenticated documents that directly implicated Judge Kirscher in corruption associated with the Yellowstone Club bankruptcy. See Ninth Circuit Docket No. 13-90073. As the then Chief Judge, Judge Kozinski had the obligation to, at a

9

minimum, initiate an investigation into Judge Kirscher based on that evidence, including production of the Kirscher emails, as in the Cebul matter. Instead, he dismissed the complaint of judicial misconduct and admonished the complainant and his counsel to stop pressing the issue, lest they be sanctioned.

In the disqualification appeal, also presided over by the then Chief Judge, he ignored the undisputed and egregious facts raising an objective appearance of judicial bias, and chose instead to "double down" by intimidating and silencing the attorneys through a threat of sanctions; and repeatedly stating at oral argument that there was "no judicial misconduct" – apparently referencing the Judicial Council proceedings then under seal.

The panel made no finding in its *per curiam* opinion that any of the facts set forth in the appellate briefing were false or that they presented a clear and present danger to the proper functioning of the courts. In the *per curiam* opinion, the panel nevertheless found no appearance of bias existed on these facts. Instead, the panel believed that the underlying motion and appeal to disqualify the bankruptcy judge under 28 U.S.C. § 455 were brought to undermine a $40 million judgment that the bankruptcy judge entered against Blixseth. After entering the *per curiam* opinion, the panel then issued an order to show cause to the five attorneys of record to explain why they should not be sanctioned for prosecuting a frivolous appeal brought for the purpose of "smearing the reputation" of the bankruptcy judge. *Per Curiam* Opinion p. 12, DktEnry 68-1. Mr. Flynn was then singled out for the alleged "frivolous appeal."

However, even in the order to show cause, the panel failed to identify any facts in the appellate briefing that it believed were false. Nevertheless, the panel ultimately issued sanctions against Mr. Flynn and his client, Mr. Blixseth, for statements that Mr. Flynn made at the *oral argument*. The facts involved both in the underlying appeal and in Mr. Flynn's opposition to the OSC were ignored except an inaccurate reference to reliance on "forged documents." It appears that the former Chief Judge has been acting as an advocate for the bankruptcy judge rather than sitting in appellate review of the facts and law in the Record. Thus, *En Banc* review is critical in this matter.

That this appeal raises issues of exceptional importance is confirmed by Judge Kozinski's own prior decision in *Standing Committee on Discipline of the U.S. District Court for the Central District of California v. Yagman*, 55 F.3d 1430 (9th Cir. 1995) where he held that given the importance to the judicial system of attorneys blowing the whistle on judicial impropriety and attorneys' related First Amendment rights, an attorney could only be sanctioned for impugning the integrity of a judge upon a finding that the attorney's statements were: (1) false; and (2) presented a "clear and present danger to the proper functioning of the courts". *Yagman*, 55 F.3d at 1438-1445.

With the order sanctioning Mr. Flynn in this matter, Judge Kozinski disregarded his own reasoning and holding in *Yagman* and opted to do that which he found in *Yagman* would diminish the public's confidence in the judicial system. The question then becomes considering his "judicial misconduct" questions at oral

11

argument, whether his basis for sanctions for a "frivolous appeal" are patently unfounded.

Indeed, in another case, Judge Kozinski denied a sanctions motion against an appellant who sought his recusal under Section 455(a) because: "Counsel for a party who believes a judge's impartiality is reasonably subject to question has not only a professional duty to his client to raise the matter, but an independent responsibility as an officer of the court. … Any other course would risk undermining public confidence in our judicial system." *In re Bernard*, 31 F.3d 842, 847 (9th Cir. 1994).

Hence, the sanctions order against Mr. Flynn raises issues of exceptional importance because if allowed to stand, it raises an appearance that this Court, and in particular Judge Kozinski, will retaliate against attorneys who exercise their duty to seek a judge's disqualification for undisputed facts that raise an appearance of bias. In fact, given Judge Kozinski's seemingly schizophrenic treatment of Mr. Flynn when contrasted with his holdings in *Yagman* and *Bernard*, one of the issues of exceptional importance is whether Judge Kozinski is himself operating under the same appearances of bias stemming from Montana that gave rise to this appeal in the first place.

While this alone justifies a rehearing *en banc*, the fact that the bankruptcy judge at issue in this case was from Montana is also significant to the "exceptional circumstance" inquiry. To wit, the Ninth Circuit Judicial Council has recently recognized that attorneys in Montana can be extremely reluctant to be critical, even anonymously, of the federal judges in Montana because of the "close-knit" legal

12

community there. See March 15, 2013 Order p. 6, Ninth Circuit Case Nos. 12-90026 and 12-90032 ("Cebul Order"). Sanctioning Mr. Flynn in this case notwithstanding the egregiousness of the *ex parte* communications perpetrated against his client, only reinforces the issues recognized in the Cebul Order; that an attorney's legitimate challenge to the Montana power structure will result in punitive measures for the whistleblower. This scenario is now being played out in the Montana Federal Court where Mr. Blixseth has been jailed for over 4 months in a matter Mr. Flynn was not involved in; but the District Judge has now issued an OSC for three of the attorneys to appear, including Mr. Flynn, for Mr. Blixseth's alleged violation of an injunction in a case Mr. Flynn is not involved in, and has never even read the injunction. *See* Ninth Circuit Case No. 15-72119 (presided over by Judge Kozinski). One can only conclude that the Montana power structure is orchestrating such manifest injustice. Now, to the mind of a 71 year old litigator who has lived 44 years "in the pit," not sitting on an appellate court, such indicia of the raw abuse of judicial power appears incomprehensible under our adversary system of justice. Mr. Flynn now understands how and why others have violated manifestly unjust court orders and risked imprisonment for acts of civil disobedience: Thoreau against slavery; Dietrich Bonhoeffer against the Nazis; Gandhi against the British; Martin Luther King against racial inequality. Resort to such measures became their last measure of protest against manifest injustice.

Judge Kozinski's conduct in disregarding the authenticated evidence of judicial corruption in the complaint of judicial misconduct against Judge Kirscher and threatening Mr. Blixseth and his counsel for having filed the complaint, while

13

contemporaneously presiding over the factually related appeal over whether Judge Kirscher's disqualification was required and issuing an order to show cause therein becomes even more egregious when the underlying facts are made known to the larger *en banc* panel. As the *en banc* panel will see, Judge Kozinski's threatening and sanctioning conduct toward the attorneys appears designed to have no other purpose than to facilitate his manipulation through his role as Chief Judge, a cover-up of Judge Kirscher's egregious judicial misconduct described above.

These facts have never been controverted - only intentionally ignored in the *per curiam* opinion in favor of comparative irrelevancies discussed in the published opinion to paint the picture of Judge Kirscher as the victim of vexatious attorneys. The reality is quite the opposite. Judge Kozinski's intentional obfuscation of the most egregious and undisputed facts that demanded both disqualification of Judge Kirscher under 28 U.S.C. § 455 and the initiation of a judicial misconduct investigation under 28 U.S.C. § 352 (see Ninth Circuit Docket No. 13-90073), coupled with his vexatious sanctions imposed against Mr. Flynn is making Judge Kozinski out to be the Queen Gertrude of our time; to which Mr. Flynn can only say, "the lady doth protest too much, me thinks." Indeed, in furtherance of preventing Mr. Flynn from allowing the undisputed facts of Judge Kirscher's judicial misdeeds to "have their day in court", Judge Kozinski denied Mr. Flynn's absolute right to have a hearing under F.R.A.P. 46(c) and Circuit Rule 46-2(d),(e) while simultaneously accusing Mr. Flynn for the first time in the order imposing sanctions that Mr. Flynn had violated his duty of candor to the Court on an issue that was not raised in the OSC. Circuit Rule 46-2(a),(b),(d). That Judge

14

Kozinski would so blatantly violate Mr. Flynn's procedural due process protections set forth in Circuit Rule 46-2 demonstrates significant bias on his part.

Finally, there is an undercurrent of facts involving Judge Kirscher relating to the Complaint for Judicial Misconduct. Ninth Circuit Case No. 13-90073. All these submissions to the Judicial Council were backed up by substantial, documented evidence. Clearly Judge Kozinski allowed his supervisory and protectionist control over the complaint of judicial misconduct against Judge Kirscher to cause him to appoint himself to the panel presiding over the disqualification appeal so that he could further control and quash any further investigation into Judge Kirscher's impropriety through threats and intimidation levied against Mr. Flynn for blowing the whistle. If the present situation does not justify *en banc* intervention, nothing does.

Mr. Flynn respectfully requests each judge of the full bench to consider the following question in the context of the documentary evidence relied upon by him to challenge Judge Kirscher; and then Mr. Flynn's decision to appear at oral argument on the appeal of the judge's denial of his own disqualification: Why did Judge Kirscher exercise improper judicial power, overtly contrary to the law and facts, to implement an *ex parte* "back room" bankruptcy plan, without Mr. Blixseth's counsels' knowledge or presence which solely targeted Blixseth, and illegally exculpated all the participants, when a legitimate, legal plan without targeting Blixseth, and without the exculps would have accomplished the same result?

15

The answer to the foregoing question lies in the documented "deal" made between Blixseth's ex wife Edra and the financial beneficiaries of the "deal" and their collective need to protect Edra from blowing the whistle on the whole scheme. The evidence proves the scheme just snowballed downhill from there and trapped the judge in biased rulings and improper *ex parte* conduct. *See* DktEntry Nos. 78-1 to 78-9 and 98-1 to 98-8. Thus, Mr. Flynn is now compelled to protect his client and pursue the truth before the full bench raising the issues herein which gravely impact the administration of justice in this matter. DktEntry Nos. 78-1 to 78-9 and 98-1 to 98-8.

The panel orders and memoranda that are the subject of the request *en banc* review are attached hereto as **Exhibits 1** and **2**.

Dated: August 18, 2015

                                       /s/ *Michael J. Flynn*
                                       Michael J. Flynn

**CERTIFICATE OF COMPLIANCE**

Pursuant to Circuit Rule 35-4 , I certify that this Response is proportionally spaced in serif font (Times New Roman), has a typeface of 14 points, and contains 4,196 words, excluding the parts of the brief exempted by Fed. R. App. P. 32. This Brief was prepared using Microsoft Word and the word court was determined using the Microsoft Word word count application.

August 18, 2015	/s/ Michael J. Flynn
	Michael J. Flynn

**PROOF OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 18, 2015.

All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

August 18, 2015                                     /s/ Michael J. Flynn
                                                                    Michael J. Flynn

**Form 11.**  **Certificate of Compliance Pursuant to
Circuit Rules 35-4 and 40-1**

---

**Form Must be Signed by Attorney or Unrepresented Litigant
and Attached to the Back of Each Copy of the Petition or Answer**

---

**(signature block below)**

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/answer is: (check applicable option)

<u>  X  </u>   Proportionately spaced, has a typeface of 14 points or more and contains <u>  4,196  </u> words (petitions and answers must not exceed 4,200 words).

**or**

<u>____</u>   Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text (petitions and answers must not exceed 4,200 words or 390 lines of text).

**or**

<u>____</u>   In compliance with Fed. R. App. 32(c) and does not exceed 15 pages.

/s/ Michael J. Flynn
_____
Signature of Attorney or
Unrepresented Litigant

**(New Form 7/1/2000)**