**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

NO. 12-35986

---

TIMOTHY L. BLIXSETH

Appellant,

v.

YELLOWSTONE MOUNTAIN CLUB, LLC
YELLOWSTONE DEVEOPMENT, LLC
BIG SKY RIDGE, LLC
YELLOWSTONE CLUB CONSTRUCTION CO., LLC

Appellees.

---

**MICHAEL J. FLYNN'S RESPONSE TO CROSSHARBOR'S MOTION
FOR FEES AND COSTS; ORAL ARGUMENT REQUESTED**

---

Appeal from the United States District Court for the District of Montana
Case No. 2:11-73-BU-SEH

---

Michael J. Flynn

Suite 800

15 Broad St.

Boston, MA  02109

mike@mjfesq.com

# TABLE OF CONTENTS

1. INTRODUCTION ........................................................................... 1

2. ARGUMENT ................................................................................. 2

   A. Mr. Flynn Cannot be Liable for CrossHarbor's Fees and Costs Incurred Prior to Mr. Flynn Making his Appearance ........................................................... 2

   B. CrossHarbor is not Entitled to Fees and Costs Incurred in Responding to the OSC ................................................................................................ 5

   C. The Requested Fees are not Reasonable ........................................ 6

      (1) If the Appeal was so Frivolous, Appellees Could Have Mitigated their Fees and Costs Sooner ................................................................... 6

      (2) The Following Amounts Sought by CrossHarbor are Not Reasonable.... 10

         (a) Fees and Costs for Preparing for and Attending Oral Argument .......... 10

         (b) The Fees and Costs Submitted by CrossHarbor are Wholly Duplicative of the other Appellees and therefore Unreasonable ..................................... 11

         (c) CrossHarbor's Attorneys' Rates are not Reasonable ........................... 14

      (3) CrossHarbor Cannot Seek Reimbursement for Fees and Costs Incurred on Matters Other than the Appellate Briefing ...................................... 16

3. CONCLUSION ............................................................................. 18

i

**1.** **INTRODUCTION**

Michael J. Flynn hereby responds in opposition to CrossHarbor's motion for fees and costs (DktEntry 110-1). Mr. Flynn's objections to CrossHarbor's gratuitous request for $159,377.58 in fees and costs are four-fold: (1) Mr. Flynn cannot be liable for CrossHarbor's fees and costs incurred prior to Mr. Flynn even making his appearance in this appeal; (2) Mr. Flynn cannot, as a matter of law, be liable for fees CrossHarbor incurred in seeking fees as a sanction; (3) CrossHarbor's fees are unreasonable for numerous different factual and legal reasons; and (4) CrossHarbor is seeking fees for time incurred on matters for which the Panel did not impose sanctions.

As will be explained below, given the numerous factual and legal defects involving numerous different categories of fees for which CrossHarbor and all the Appellees seek reimbursement, Mr. Flynn requests that the Court impose a total sanction against him in this appeal of $10,000 to be divided amongst all the Appellees as they see fit.

Should the Commissioner not award the flat $10,000 sanction against Mr. Flynn, Mr. Flynn has dissected the fees sought by CrossHarbor and organized those fees by different categories of work allegedly performed by CrossHarbor's attorneys to demonstrate how the fees sought are not legally recoverable, duplicative, inflated, unreasonable and otherwise wholly inappropriate as against Mr. Flynn. This organization is contained in the spreadsheets attached hereto as

1

**Exhibits 1[1], Exhibit 2[2]** and **Exhibit 3[3]** and summarized below in the Conclusion. In the Conclusion, Mr. Flynn summarizes the various categories of unreasonable fees and line items the legally and factually required significant deductions from CrossHarbor's $159,377.58 demand. After aggregating the numerous required deductions, the Commissioner will see that, at most, CrossHarbor is only entitled, if at all, to an award of less than $3,000.

**2.**   **ARGUMENT**

   **A.**   **Mr. Flynn Cannot be Liable for CrossHarbor's Fees and Costs Incurred Prior to Mr. Flynn Making his Appearance**

Mr. Flynn did not make his appearance in this appeal until August 7, 2013. DktEntry 46. The appellate briefing was concluded a month earlier on July 18, 2013 when Mr. Blixseth submitted his Reply Brief. DktEntry 42.

The Panel stated that it imposed sanctions against Mr. Flynn under 28 U.S.C. § 1927. DktEntry 106, pp. 4. Under 28 U.S.C. § 1927, an attorney can only be liable for an opposing party's attorneys' fees and costs based on that

---

[1] Exhibit 1 is a spreadsheet prepared by Mr. Flynn reflecting all the time entries for Duane Morris at its "New York" rates, and Mr. Flynn's corresponding objections thereto.

[2] Exhibit 2 is a spreadsheet prepared by Mr. Flynn reflecting all the time entries for Duane Morris reflecting a "reasonable rate", and Mr. Flynn's corresponding objections thereto.

[3] Exhibit 3 is a spreadsheet prepared by Mr. Flynn reflecting all the time entries for Crowley Fleck LLP and Mr. Flynn's corresponding objections thereto.

attorney's own conduct, and not the conduct of his or her co-counsel or the party the attorney represents. *Primus Automotive Financial Services, Inc. v. Batarse*, 115 F.3d 644, 649-650 (9th Cir. 1997) (citing *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995) (stating rule in context of both Section 1927 and inherent powers); *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1120-1121 (9th Cir. 2000) ("Any sanctions imposed against the lawyer should be based solely on his own improper conduct without considering the conduct of the parties or any other attorney.") (internal quotations and alterations omitted).

While the Panel also stated that it was imposing sanctions under F.R.A.P. 38, nothing in F.R.A.P. 38 indicates that an attorney can be liable for the other party's fees and costs incurred in defending against allegedly frivolous briefs that the attorney did not sign and which were filed prior to the attorney making an appearance in the case. *See N.L.R.B. v. Unbelievable, Inc.*, 71 F.3d 1434, 1441-1442 (9th Cir. 1995)(imposing Rule 38 sanctions on appellant and appellant's original counsel but refusing to impose Rule 38 sanctions against appellant's new counsel who substituted into the appeal after the reply brief was filed); *see also Bakker v. Grutman*, 942 F.2d 236, 240 (4th Cir. 1991) (analyzing issue under Rule 11 and holding that an attorney who substitutes in after a frivolous complaint is filed cannot be sanctioned on a retroactive basis for the frivolous filing of former counsel); *Martin v. Brown*, 63 F.3d 1252, 1264-1265 (3rd Cir. 1995) (stating that any sanction awarded against an attorney, whether under Section 1927, Rule 11, or inherent powers, must be based on that attorney's own conduct, not the conduct of other counsel or the client).

3

As such, Mr. Flynn cannot, as a matter of law, be liable for any fees and costs incurred by the Appellees before he made is appearance on August 7, 2013. As applied here, this means that under the following scenarios, CrossHarbor's requested fees must be reduced as follows:

CrossHarbor's law firm Duane Morris seeks $119,938.50 in fees. However, the legal rates that Duane Morris charges to arrive at this figure are unreasonable, as explained *infra*. Accounting for the appropriate fee rate, Duane Morris should only recover, if at all, $862.50 against Mr. Flynn because this amount represents the time incurred by CrossHarbor's attorneys at a reasonable fee rate after Mr. Flynn made his appearance and does not include the fees CrossHarbor's attorneys incurred in responding to the OSC because, as explained *infra*, those fees are not recoverable as a sanction as a matter of law. Compare **Exhibits 1 and 2**. Even if the Commissioner believes Duane Morris's fee rate is reasonable (even though the amount sought by Duane Morris exceeds the annual median household income in Montana three-fold[4]), Duane Morris should only recover, if at all, $1,289.50 against Mr. Flynn for fees incurred after Mr. Flynn made his appearance and exclusive of the fees CrossHarbor's attorneys incurred in responding to the OSC, or attending the oral argument at which its attorney did not actually argue.

---

[4] http://quickfacts.census.gov/qfd/states/30000.html

**B.** **CrossHarbor is not Entitled to Fees and Costs Incurred in Responding to the OSC**

CrossHarbor asserts that it incurred $52,682.00 in "Responding to OSC". DktEntry 110-1, pp. 21-22. This is not compensable as a matter of law and is entirely unreasonable. In this Circuit, a sanction award against an attorney cannot include the claimant's fees and costs incurred in seeking the fees and costs. *In re S. Cal. Sunbelt Developers, Inc.*, 608 F.3d 456, 466 (9th Cir. 2010) ("We thus find that the district court erred in including the defendants' attorneys' fees for preparing their motion for sanctions in the sanctions it imposed."). In other words, when sanctions are imposed, the sanctioning court cannot award fees on fees. *Id.* at 462, 466-467. Rather, the amount of sanctions awarded can only relate to the offensive conduct and damage caused thereby. *Id.* at 462, 466-467.

As such, CrossHarbor's request for $52,682.00 to respond to the OSC is not awardable to it as a matter of law. In any event, this amount is entirely unreasonable because the entirety of CrossHarbor's Response to the OSC with respect to Mr. Flynn is not directed at all to the appellate briefing in this case but is an omnibus airing of grievances by CrossHarbor about Mr. Flynn based on years and years of litigation involving Mr. Flynn in other cases. DktEntry 89, pp. 9-19. While CrossHarbor is free to pay its attorneys over $50,000 to draft a manifesto against Mr. Flynn, that manifesto was entirely unresponsive, and therefore unreasonable, to the issue raised by the Panel in the OSC, which was the merits of the appellate briefing in this case.

C. **The Requested Fees are not Reasonable**

(1) **If the Appeal was so Frivolous, Appellees Could Have Mitigated their Fees and Costs Sooner**

Mr. Blixseth first filed his motion to disqualify the bankruptcy judge in the bankruptcy court on November 30, 2010.  ER Vol. III, 233.  The bankruptcy judge denied that motion on February 25, 2011.  ER Vol. I, 94.  Mr. Blixseth timely appealed that denial to the District Court.  On November 16, 2012, the District Court affirmed the bankruptcy court's denial of the disqualification motion.  ER Vol. I, 1.  On November 28, 2012, Mr. Blixseth appealed the District Court's affirmance to this Court.  ER Vol. II, 95.  On February 18, 2014, the Panel issued its Order to Show Cause why Mr. Flynn should not be sanctioned for being part of the appeal.

In the three and a half years that Mr. Blixseth's disqualification motion was pending (either as a motion or an appeal) no party had ever sought sanctions under Rule 11, Rule 38, 28 U.S.C. § 1927 or inherent powers claiming that the allegations in the disqualification motion were frivolous.

It was not until the appeal was fully completed with an opinion from the Panel, that the Panel for the first time claimed that the disqualification motion and related appeals were frivolous.  Under these circumstances, it is not reasonable nor fair, as a matter of law, to force Mr. Flynn to pay the full freight of the Appellees' attorneys' fees and costs when they could have mitigated those fees and costs three and a half years ago by filing an appropriate motion claiming that the alleged grounds for disqualification were frivolous.  As this Court held in *Yagman*, under

6

these circumstances, "it flies in the face of the primary purpose of sanctions, which is to deter subsequent abuses. This policy is not well served by tolerating abuses during the course of an action and then punishing the offender after the [appeal] is at an end. A proper sanction assessed at the time of a transgression will ordinarily have some measure of deterrent effect on subsequent abuses and resultant sanctions. Such prompt action helps enhance the credibility of the rule and, by deterring further abuse, achieve its therapeutic purpose.  Moreover, the accumulation procedure used at bar 'tends to perpetuate the waste and delay which the rule[s are] intended to eliminate.'  …[T]he magnitude of the sanctions [over $200,000 sought] in this case is directly related to the use of this procedure. Abuses were allowed to pass unchecked and, thus, undeterred, and attorney's fees were allowed to accumulate. As a consequence, we are left faced with an unusually large sanctions amount that will, contrary to the policy, impart absolutely no deterrent value to this case. It appears the efficiency achieved by levying two years' worth of sanctions in one post-trial lump has been paid for in wasted judicial resources and money."  *Matter of Yagman*, 796 F.2d 1165, 1185 (9th Cir. 1986).

Here, *Yagman* applies perfectly and requires an across the board denial of the Appellees fees and costs.  If this appeal was so frivolous as the Panel determined, then it is unreasonable to force Mr. Flynn to pay the full freight of Appellees fees and costs at the end of the appeal when the Appellees, in the prior three and a half years, never asserted the appeal's frivolity.  *Yagman*, 796 F.2d at 1185.

Indeed, a party seeking a sanctions award for the other party's frivolous filing or conduct has a duty to mitigate its own fees and costs incurred by the alleged frivolous or wrongful conduct. *United Food & Commercial Workers Union Local No. 115 v. Armour and Co.*, 106 F.R.D. 345, 350 (N.D. Cal. 1985) ("The duty is one of mitigation; it rests on the concept that the victim of a frivolous lawsuit must use reasonable means to terminate the litigation and to prevent the costs of that frivolous suit from becoming excessive. If a party eventually wins rule 11 sanctions, but has failed to use the least expensive route to early resolution, the court may rule that not all the expenses the successful party incurred in making formal motions were reasonable attorney's fees that should be awarded under rule 11.").

As this Court stated in *Yagman*, 796 F.2d at 1185 concerning a proper sanctions award under Rule 11, "[a] party having vigorously resisted a baseless claim may therefore find that the court, in making a [sanctions] award, will consider its expenditures to have been excessive." *Matter of Yagman*, 796 F.2d 1165, 1185 (9th Cir.1986) (recognizing duty to mitigate in cases of Rule 11 sanctions), *amended*, 803 F.2d 1085 (1986); see also *Divane v. Krull Elec. Co.*, 319 F.3d 307, 321 (7th Cir. 2003) (party seeking an award of fees for sanctions resulting from frivolous litigation itself has a duty "to mitigate its legal fees and expenses by resolving frivolous issues quickly and efficiently … This entails an examination of the promptness and method of bringing the frivolous conduct to the attention of both the court and the opposing party.") (emphasis added) (quoting *Dubisky v. Owens*, 849 F.2d 1034, 1037 (7th Cir.1988)).

8

Where an appeal is frivolous then the responsive briefing could have been expedited based on the appeal's very frivolity. In such circumstances, it is not reasonable, nor appropriate, to reimburse the appellee for the avoidable fees and costs incurred in responding to a frivolous appeal that, by definition could have been easily dispensed with. Wright & Miller, 16AA Fed. Prac. & Proc. Juris. § 3984.2 (4th ed.) ("After all, in at least some instances the very frivolity that makes the appeal sanctionable should also expedite the drafting of the responsive brief. An appellee who incurs needless costs in opposing a frivolous appeal is not likely to be awarded sanctions that reimburse the avoidable costs, and indeed may be denied any award at all."). Indeed, "[i]f a baseless claim could have been readily disposed of by summary procedures, there is little justification for a claim for attorney's fees and expenses engendered in lengthy and elaborate proceedings in opposition." *Pollution Control Indus. of Am., Inc. v. Van Gundy*, 21 F.3d 152, 156 (7th Cir. 1994) (*quoting Dubinsky*, 849 F.2d at 1037).

For example, in *B&H Medical, LLC v. ABP Admin., Inc.*, 534 F.3d 801, 803 (5th Cir. 2008) the appellees requested $152,846.11 in fees and costs under Rule 38 for defending a frivolous appeal. The 5th Circuit believed that the appeal was frivolous but also believed that because it was so frivolous, it was manifestly unreasonable for the appellees to have incurred over $150,000 in fees and costs to defend the frivolous appeal. Therefore, the 5th Circuit reduced the sanction award under Rule 38 to $10,000.

Similarly here, if the appeal was so frivolous as the Appellees now claim, it was manifestly unreasonable and avoidable for them to have incurred over

9

$200,000 in fees and costs in this appeal when they could have mitigated the fees and costs over three years ago by claiming that the disqualification motion was frivolous. Indeed, in this Court they could have sought a summary disposition under Circuit Rule 3-6 based on the alleged frivolity of the appeal. Appellees had their own duty to mitigate their fees and costs incurred relative to the disqualification motion and appeal but failed to do so. That failure now makes their claims for over $200,000 in fees and costs manifestly unreasonable. *Yagman*, 796 F.2d at 1185 (9th Cir.1986); *Pollution Control Indus. of Am., Inc.*, 21 F.3d at 156; *Dubinsky*, 849 F.2d at 1037.

Mr. Flynn therefore requests that this Court follow the lead of the 5th Circuit in *B&H Medical* and reduce the fees and costs sought by all the Appellees to $10,000.

**(2)    The Following Amounts Sought by CrossHarbor are Not Reasonable**

**(a)    <u>Fees and Costs for Preparing for and Attending Oral Argument</u>**

CrossHarbor seeks $37,452.23 in fees and costs for its two law firms to allegedly prepare for and attend the oral argument in this appeal at which they never actually argued. DktEntry No. 110-1, p. 22. This amount is not reasonable for the simple reason that CrossHarbor's counsel did not even argue at oral argument. Only one attorney argued for all the Appellees. That attorney was Mr. Patten, who represented the Debtors, not CrossHarbor, and who filed a separate fee application. DktEntry 112-1. It is entirely unreasonable for CrossHarbor to apply for fees and costs associated with its counsel preparing for and attending a hearing

at which its counsel did not argue and whose presence was therefore patently unnecessary. *Democratic Party of Wash. v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) ("[C]ourts ought to examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do.") (emphasis added).

In a similar vein, CrossHarbor seeks reimbursement of $1,211.83 in travel costs associated with the oral argument. DktEntry 110-1, p. 24. Again, these costs were unreasonably incurred because CrossHarbor's counsel never argued at oral argument.

**(b)** **The Fees and Costs Submitted by CrossHarbor are Wholly Duplicative of the other Appellees and therefore Unreasonable**

An award of duplicative fees and costs incurred amongst several law firms and multiple attorneys working on the same brief is unreasonable as a matter of law and mandates disallowance. *Democratic Party of Wash.*, 388 F.3d at 1286. Here, all the Appellees submitted only one appellate brief. One would have thought that the submission of one appellate brief by three Appellees would have saved significantly on attorneys' fees. Yet, it appears to have had the opposite effect by turning the briefing process into a smorgasbord of attorney conferencing, reviewing, obtaining, interviewing, revising, collecting, preparing and the like. See **Exhibits 1, and 3**. This was manifestly unreasonable and Appellees have failed to satisfy their burden to justify such duplicative work.

11

In seeking an attorney's fees award, a party has a duty to mitigate the fees it incurred. *Yagman*, 796 F.2d at 1185. Moreover, the applicant seeking fees carries the burden of establishing an entitlement to an award and the reasonableness of the fee sought. *Outdoor Systems, Inc. v. City of Mesa*, 997 F.2d 604, 619-620 (9th Cir. 1993). A party fails to satisfy this duty when it over- lawyers its responses to the sanctionable conduct. *ADO Finance, AG v. McDonnell Douglas Corp.*, 938 F.Supp. 590, 595 (C.D. Cal. 1996); *see White v. General Motors Corp.*, 908 F.2d 675, 684 (10th Cir. 1990), cert. denied, 498 U.S. 1069, 112 L. Ed. 2d 850, 111 S. Ct. 788 (1991); *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 988 (4th Cir. 1987).

In a similar vein, where multiple law firms work on the same particular matter, each law firm must demonstrate that its specific involvement was necessary to their client's success, not just helpful. *Outdoor Systems, Inc.*, 997 F.2d at 620.

Accordingly, a court must eliminate duplicative fees from an attorney's fees award. *Outdoor Systems, Inc.*, 997 F.2d at 620. Where one attorney reviews another's work, the time spent is duplicative and therefore not recoverable. *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *Democratic Party of Wash.*, 388 F.3d at 1286.

Here, there were three Appellees; CrossHarbor, the Debtors, and the Yellowstone Club Liquidating Trustee with Mr. Glasser as Trustee. All three Appellees filed separate fee applications for their separate law firms. Yet, all three Appellees filed just one Answering Brief.

12

Moreover, as to CrossHarbor, it lawyered this appeal with two law firms, both of which duplicated work (see Exhibits 1 and 3).

To be entitled to these duplicative fees, this Court made clear in *Outdoor Systems* that the burden fell on CrossHarbor to specifically identify how its duplicative fees were necessary to the success of the appeal, not just helpful. *Outdoor Systems, Inc.*, 997 F.2d at 620. It failed entirely to do so. Indeed, in its fee application, it fails entirely to explain how its attorneys' involvement in this appeal was necessary to the success thereof to the exclusion of the attorneys for the other Appellees, let alone how or why it specifically needed two different law firms to represent it in this appeal. As such, the Court should deny CrossHarbor all of its requested fees related to this appeal because it has failed entirely to identify with any modicum of specificity why its multiply attorneys and law firms in addition to the other Appellees' lawyers were necessary to defeat this appeal, not just helpful.

In other words, the burden fell on CrossHarbor, and all the Appellees for that matter, to justify why its attorneys were specifically necessary to defeat this appeal. *Outdoor Systems, Inc.*, 997 F.2d at 620. By failing to do so, CrossHarbor has left Mr. Flynn and the Commissioner with no way ascertaining the reasonableness of their duplicative fees. As such, the Commissioner must strike their requested fees in totality.

Moreover, even the work done between CrossHarbor's two law firms is duplicative. Duane Morris and Crowley Fleck constantly bill for phone calls and reading each other's e-mails or even double and triple bill for reading the same

13

brief filled by the Appellant. *See generally* Exhibit 1 and 3. For example, Mr. Hursh billed .8 hours on July 22, 2013 for "Review of Blixseth Brief"; however, Messrs. Moore and Lastowski billed $914.00 for reading presumably the same brief three days earlier on July 18, 2013. This is but one example of CrossHarbor's numerous instances of over-lawyering. Nearly the entirety of work performed by Paul Moore is duplicative of work performed by others. For example, on January 4, 2013, Mr. Lastowski charges $238.50 for "E-mail exchange with P. Moore and B. Hursh . . ." Mr. Moore charge $208.50 on January 4, 2013 for "Exchange emails (2X) with Messrs. Hursh and Lastowski." On March 25, 2014, Messrs. Lastowski, Moore, and Hitchings each charge time for a "All hands call" (both Lastowski and Hitchings charge exactly .7 for the call, while Mr. Moore charges .9 hours."). In fact, both Messrs. Lastowski, Moore, and Hursh charge time for preparing for the all hands call. Another example, Messrs. Lastowski and Moore both bill (.7 for Mr. Lastowski and .6 for Mr. Moore) for conference calls on April 7, 2014. Given Mr. Lastowski's hourly rate is $795.00 and Mr. Moore's is $695.00, double billing this type of activity still leads to nearly $1,000 worth of time. Mr. Flynn has prepared spreadsheets to identify his objections to these various duplications of work, which are legion (See Exhibits Nos. 1-3).

### (c)     CrossHarbor's Attorneys' Rates are not Reasonable

In *Blum v. Stenson*, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984), the Supreme Court held that "reasonable fees" "are to be calculated according to the prevailing market rates in the relevant community." *Id.* at 895. The Court further held that "the burden is on the fee applicant to produce satisfactory

14

evidence--*in addition to the attorney's own affidavits*--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." 465 U.S. at 896 n.11 (emphasis added). "The relevant community is generally defined as 'the forum in which the district court sits.'" *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009).

Here, CrossHarbor's fee application is wholly lacking any of these basic requirements. First and foremost, other than the self-serving affidavits of Michael Lastowski of Duane Morris and Ben Hursh of Crowley Fleck, CrossHarbor offers no other evidence of what the prevailing market rates are in the relevant community. On this basis alone, the Commissioner must disallow CrossHarbor's fee application in its entirety. *Blum*, 465 U.S. at 896 n. 11 (burden is on fee applicant to establish prevailing market rates, to satisfy this burden, the applicant must submit evidence in addition to the attorneys' own affidavit).

Nevertheless, because the relevant market is Montana, the forum in which the district court sits, Duane Morris's fees are entirely unreasonable. Duane Morris is an international law firm, but has no offices in Montana. See Dkt Entry 110-1, pp. 12-13. Yet, with its fee application, CrossHarbor is seeking Mr. Flynn to pay Duane Morris's "big city" rates of between $695-795 without any evidence by CrossHarbor that these rates are the prevailing market rates in Montana. In fact, we know that they are not because CrossHarbor's counsel in Montana, Ben Hursh, charges CrossHarbor only $245, or Andy Patten, who charges $250 per hour. As such, the Commissioner at a minimum must reduce Duane Morris' fees to $250/hr.

15

This results in a across the board reduction in CrossHarbor's fee application to $54,474.50, not including the other required reductions discussed herein. See Exhibit 3.

> **(3)** **CrossHarbor Cannot Seek Reimbursement for Fees and Costs Incurred on Matters Other than the Appellate Briefing**

When a court imposes sanctions against an attorney, the court must specify the particular misconduct and the sanction award must be related to that specific misconduct. *Matter of Yagman*, 796 F.2d at 1184 (rejecting district court's sanctions award based on a generic statement of wrongdoing and holding: "[i]t is crucial, therefore, that a sanctions award be quantifiable with some precision and properly itemized in terms of the perceived misconduct and the sanctioning authority."); *see also Lloyd v. Schlag*, 884 F.2d 409, 413 (9th Cir. 1989). In other words, it is improper for a claimant to seek reimbursement for fees incurred in the litigation that was not the basis for sanctions in the first place.

Here, the Panel stated in its Order to Show Cause that it was seeking to impose sanctions based on the 19 grounds for disqualification that Mr. Blixseth advanced in his appellate briefing that the Panel believed were frivolous. DktEntry 69, p. 1. The Panel again stated in its order imposing sanctions against Mr. Flynn that the imposition of sanctions was based on the allegedly meritless grounds for disqualification advanced by Mr. Blixseth in his disqualification motion and resulting appeal. DkEntry 106, p. 2-3, 4.

Thus, the Panel in its Order to Show Cause and resulting order sanctioning Mr. Flynn, imposed sanctions against Mr. Flynn based on the arguments and

16

accusations in the appellate briefing. Nevertheless, CrossHarbor includes in its claim for fees, attorney time incurred on matters not involving the appellate briefing. Specifically, CrossHarbor seeks $52,682.00 in fees for: (1) responding to an emergency motion to stay the appeal and, (2) responding to the OSC. DktEntry 119-1, p. 23.[5]

To the extent that the Panel in its August 4, 2015 order levying sanctions against Mr. Flynn purported to sanction him for conduct not related to the briefing, such as supposed breaches of duties of candor to the Court and conduct at oral argument, Mr. Flynn cannot have fees levied against him for such conduct because such conduct was not identified in the Order to Show Cause. It is hornbook law that due process requires a court to specifically identify with particularity the alleged wrongful conduct for which the court seeks to impose sanctions and to give the accused attorney notice and opportunity to respond to those specific allegations. *Foster v. Wilson*, 504 F.3d 1046, 1052-1053 (9th Cir. 2007). Sanctions cannot stand where an attorney is given notice that sanctions may be imposed for certain specified conduct but then the court in imposing sanctions identifies other conduct, not previously specified, as the basis for sanctions. *Id*.

---

[5] The fee analysis attached as Exhibit Nos. 1 and 3, demonstrate that CrossHarbor is actually seeking $62,815.50 in fees related just to the Order to Show Cause. A closer look at Duane Morris' invoices shows that its response to Mr. Blixseth's emergency motion to stay is listed as T5, not T6 in places. So CrossHarbor's application is not clear exactly what time goes to what category.

3.    **CONCLUSION**

In summary, Mr. Flynn believes that the only reasonable sanction under *Yagman* and *B&H Medical, LLC* is a blanket $10,000 award payable to the Appellees collectively for their failure to mitigate their own fees and costs and because Appellees failed entirely in their burden to establish the "prevailing market rates" with evidence other than their self-serving affidavits. However, if the Commissioner disagrees, Mr. Flynn believes the errors explained above require reductions of CrossHarbor's requested $157,169 claim to $2,283.50 ($862.50 to Duane Morris and $ 1,421.00 to Crowley Fleck) as follows:

**Duane Morris LLP**

Necessary Reductions without Adjusting Fee Rates to Reasonable Fee Rates

| Category of Improper Fees | Necessary Reduction |
|---|---|
| **Fee Requested** | $119,928.50 |
| Responding to the OSC | ($50,744.50) |
| Fees Incurred Before Mr. Flynn Made his Appearance | ($43,955.50) |
| Duplicative Fees/Block Billing, etc. that was not already objected to on other grounds | ($2,114.50) |
| Fees Incurred for Appearing at Oral Argument | ($21,834.50) |
| **Total Fee without Rate Reduction to Montana Rate** | $1,289.50 |

18

**Duane Morris LLP**

Necessary Reductions with Montana Rates of $250

| Category of Improper Fees | Necessary Reduction With Reduced Amounts Reflecting a Montana Rate |
|---|---|
| **Fee Requested Adjusted to Montana Rate** | $54,474.50 |
| Responding to the OSC | ($ 23,905.00) |
| Fees Incurred Before Mr. Flynn Made his Appearance | ($ 21,923.00) |
| Duplicative Fees/Block Billing, etc. that was not already objected to on other grounds | ($ 753.00) |
| Fees Incurred for Appearing at Oral Argument | ($7,031.00) |
| **Total Fee with Montana Rate Reduction** | $ 862.50 |

**Crowley Fleck LLP**

Necessary Reductions with Montana Rates

| Category of Improper Fees | Necessary Reduction |
|---|---|
| **Fee Requested** | $37,230.50 |
| Responding to the OSC | ($12,216.00) |

19

| | |
|---|---|
| Fees Incurred Before Mr. Flynn Made his Appearance | ($4,067.00) |
| Duplicative Fees/Block Billing, etc. that was not already objected to on other grounds | ($5,120.50) |
| Fees Incurred for Appearing at Oral Argument and not arguing | ($14,406.00) |
| **Total Fee at Montana Rate** | $ 1,421.00 |

Dated: November 12, 2015

_/s/ Michael J. Flynn_
Michael J. Flynn

**PROOF OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 12, 2015.

All participants in the case are registered CM/ECF users will be served by the appellate CM/ECF system.

November 12, 2015                                    /s/ Michael J. Flynn

                                                     Michael J. Flynn